Darryl Elroy STEWART, Appellant,

v.

The STATE of Texas, Appellee.

No. 68889.

Court of Criminal Appeals of Texas,
En Banc.

Sept. 19, 1984.
Rehearing Denied Feb. 6, 1985.

Will Gray, on appeal only, Simonton, for appellant.

John B. Holmes, Jr., Dist. Atty., and James C. Brough, Asst. Dist. Atty., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

McCORMICK, Judge.

Appellant was convicted of capital murder. Punishment was assessed at death. The sufficiency of the evidence is not challenged.

██ In grounds of error one through three, appellant complains of the exclusion of twelve prospective jurors for cause in violation of *Adams v. Texas*, 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980), and *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).[1] In his fourth ground of error, he contends that error was committed when the trial court denied his challenge for cause to prospective juror Felts and he was forced to use a peremptory challenge.

Voir dire selection in this case commenced on June 12, 1980, some thirteen days prior to the United States Supreme Court's decision in *Adams v. Texas*, supra. At the time of the *Adams* decision, the voir dire selection in this case was still in progress. Prior to the *Adams* decision, all of the jurors complained of in appellant's first four grounds of error were excused by the trial court. On July 2, 1980, appellant's trial counsel, aware of the *Adams* decision, apprised the trial court that some of the jurors who had been previously excused might have been excused erroneously and requested one additional peremptory strike to cure the error:

---

1. The state of the record in this case causes us to offer a comment concerning its organization. The record has come to us in eleven volumes. The transcription of the proceedings has not been arranged in chronological order and this makes it extremely difficult to review, further complicated by the fact that there is no central index. To illustrate, the voir dire begins in Volume II, page 2617. It continues through Volume XI, page 4204. It then continues in Volume I, page 231 and ends in Volume IV, page 1753. The actual trial on guilt and punishment is located in Volumes V and VI. If a record is not organized chronologically, the court reporter should at least furnish the appellate courts with a complete central index. We compliment both the attorney for appellant and the State for citing us to the proper portions of the record for without their assistance our task would have been even more difficult.

"MR. MUSSLEWHITE; If it please the Court, comes now the Defendant Darryl Stewart by and through his attorneys, respectfully request the Court for additional pre-emptory (sic) challenges. The next to the last juror, that was stricken by the Defendant, whose name is Earl Felts, it is our position that we have a right to rely on the jurors to follow the law and may be able to fit into our defensive theory. He was challenged in a situation where if the State challenged him, it is my humble opinion it would have been a good challenge, but because the defense challenged him on this ground, it was overruled and we were required to strike him. Further, with regards to some, as I have it, it may not be quite correct, but some nineteen challenges were made by the State for cause concerning perspective (sic) jurors.

"In view of the recent Supreme Court opinion, I believe it is Adams vs. Texas, to the best of my recollection there were two jurors back in there, and I apologize to the Court, I cannot give their names — I can start going back in here. But up through the first sixteen perspective (sic) jurors who were excused for cause, it is my recollection that at least two of them were put to answer the question based upon the Texas Code dealing with whether or not the fact that the death penalty was involved in this case, whether or not that would affect their deliberations on any fact issue, and with an affirmative answer, they were excused, which we submit, for the recent case, is improper.

"Further, with regard to some of these jurors, we feel that they were improperly excused, based upon the law of parties in some instances — I honestly can't tell you how many. It is our belief that the Court improperly discussed the law of parties with reference to the answer to the first question in the punishment phase. Further, with reference to other jurors, perspective (sic) jurors, there were some who were excused because they could not answer the questions dealing in the punishment phase with respect to a party who was not the actual direct perpetrator of the offense.

"We further object to the systematic exclusion of all blacks from this jury. There were some, as I recall, that were struck by the — I will take that back. The State has used a couple of strikes on them. I don't recall. But five of those that were struck for cause were black.

"*For all of those reasons, Your Honor, we would respectfully request an additional pre-emptory (sic) challenge.*

"THE COURT: Right. I think the record should reflect that the Adams vs. Texas case has been decided after we had already selected some jurors in this case. And without assigning it to any particular juror, I am going to grant your motion for that additional strike, in abundance of caution, in the matter.

"MR. MUSSLEWHITE: Thank you.

"MR. ARNOLD: Is that one additional strike, Your Honor?

"THE COURT: One additional strike."
(Emphasis added)

■ A constitutional error may be waived by the party affected. *Rogers v. State*, 640 S.W.2d 248 (Tex.Cr.App.1982) (on State's Second Motion for Rehearing); *Thompson v. State*, 537 S.W.2d 732 (Tex.Cr.App.1976). This applies to jurors improperly removed in capital murder cases. *Crawford v. State*, 617 S.W.2d 925 (Tex.Cr.App.1981) (on rehearing). *Russell v. State*, 598 S.W.2d 238 (Tex.Cr.App.1980); *Boulware v. State*, 542 S.W.2d 677 (Tex.Cr.App. 1976).

■ It is clear in the instant case with reference to those jurors who might have been improperly excused prior to July 2, 1980, and with reference to the denial of appellant's challenge for cause to prospective juror Felts which also occurred prior to July 2, 1980, that appellant received all the

relief which he requested. Since appellant received the one additional peremptory strike which he requested and made no further objection concerning the court's action pertaining to these thirteen jurors, we hold that error, if any, was waived. *De-Russe v. State*, 579 S.W.2d 224 (Tex.Cr. App.1979); *Duffy v. State*, 567 S.W.2d 197, 205 (Tex.Cr.App.1978); *Boulware v. State*, supra. Grounds of error one through four are overruled.

■ In his fifth ground of error, appellant contends that Article 37.071, V.A.C. C.P., violates the Eighth and Fourteenth Amendments of the United States Constitution because it contains no provisions for directing and instructing the jury's consideration of mitigating circumstances at the punishment phase of the trial. Appellant relies upon the United States Supreme Court decisions in *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); *Green v. Georgia*, 442 U.S. 95, 99 S.Ct. 2150, 60 L.Ed.2d 738 (1979), and *Eddings v. Oklahoma*, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982). All three of the cases relied upon by appellant concern situations in which the sentencers in a capital case were *precluded* from considering mitigating evidence in the punishment phase of each case. To meet constitutional muster, the sentencers in a capital case must be allowed to consider all relevant mitigating evidence. *Lockett v. Ohio*, supra; *Green v. Georgia*, supra; *Eddings v. Oklahoma*, supra; *Woodson v. North Carolina*, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976).

Article 37.071, supra, has previously passed constitutional muster in *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976), and *Quinones v. State*, 592 S.W.2d 933, 947 (Tex.Cr.App.1980), where it was determined that Article 37.071 provides that "in considering whether to impose a death sentence the jury may be asked to consider whatever evidence of mitigating circumstances the defense can bring before it." Thus, "the Texas capital-sentencing procedure guides and focuses the jury's objective consideration of the particularized circumstances of the individual offense and the individual offender before it can impose a death sentence." *Jurek v. Texas*, 96 S.Ct. at 2957.

■ Appellant relies upon *Spivey v. Zant*, 661 F.2d 464 (5th Cir.1981), for the proposition that the jury in a capital case must be instructed in the court's charge to consider mitigating circumstances in passing upon the question of the death penalty. *Spivey v. Zant*, at page 471. We would remind appellant that this Court is not bound by the decisions of any lower federal court. *Flores v. State*, 487 S.W.2d 122 (Tex.Cr.App.1972); *Pruett v. State*, 463 S.W.2d 191 (Tex.Cr.App.1971). Further, we held in *Quinones v. State*, supra, that no jury charge regarding evidence of any mitigating circumstances was necessary since the questions prescribed under Article 37.071 clearly allow the jury to grasp the logical relevance of mitigating evidence. Finally, our review of the record shows that appellant never requested the trial court to charge the jury on mitigation.

Appellant argues that, since by the time the punishment phase of the trial was reached the jury had already found that the defendant acted "intentionally or knowingly," the jury was precluded from considering mitigating circumstances when it considered appellant's "deliberateness" in answering Special Issue No. 1. Further, he argues that in a case such as the instant one, where there was evidence that the defendant was not the triggerman, but the jury was instructed on the law of parties at the guilt-innocence phase, the State's burden of proof on the first punishment issue was materially reduced, and the jury was compelled to view the first punishment question as requiring a "yes" answer.

■ We would note initially that there was conflicting evidence as to whether appellant was the triggerman. Thus, it is very possible that the jury convicted appellant believing that he did kill the victim. Furthermore, we have held that "deliberately" and "intentionally or knowingly" are not linquistically equivalent. *Heckert v. State*, 612 S.W.2d 549 (Tex.Cr.App.1981).

We have also held that the word "deliberate[ly]" as used in Article 37.071 need not be defined in the court's charge to the jury at the penalty stage of a capital murder trial. *Russell v. State*, 665 S.W.2d 771 (Tex.Cr.App.1983); *King v. State*, 553 S.W.2d 105, 107 (Tex.Cr.App.1977). Rather, the term "deliberately" is to be taken and understood in its normal use in common language. *Esquivel v. State*, 595 S.W.2d 516 (Tex.Cr.App.1980); *King v. State*, supra.

Appellant argues that we cannot be certain that the jury reached its decision without regard to the mitigating circumstances, and this should compel reversal. However, we cannot tell from the record that the jury did *not* consider the mitigating factors. Article 37.071(a) provides that during the punishment phase evidence may be presented as to any matter that the court deems relevant to sentencing. The jury was allowed to hear evidence of mitigation. The jury was given the freedom to construe "deliberately" as they understood it to be commonly used. Appellant has provided no evidence to show that the jury *did* construe "deliberately" as the equivalent of "intentionally or knowingly." We decline to assume they did so.

█ Because the Texas statutes do not preclude consideration of mitigating circumstances and because appellant has not proven that the jury in the instant case did not consider the mitigating circumstances in answering the first special issue, we overrule his fifth ground of error.

In his sixth ground of error, appellant complains of the exclusion of testimony that would have shown that appellant's co-defendant was the actual killer.

On direct examination, Detective William Owen testified that he and his partner Detective Jim Roberts investigated the crime scene. On cross-examination, Detective Owen testified that during the course of their investigation he personally did not question Michael Rainey, a neighborhood child, but that the child was questioned by Detective Roberts. Appellant now argues that Detective Owen should have been allowed to testify regarding information Detective Roberts obtained from Michael Rainey because that information would have shown that appellant's co-defendant was the actual killer. Defense counsel asked the following:

"Q. Do you know whether or not you got information about it, the description being a heavy-chested man?

"MR. ARNOLD: I object to this. This is the very thing I object to as being hearsay.

"THE COURT: Sustained.

    *      *      *      *      *      *

"THE COURT: Whatever information appears on that offense report that you got from someone else, was it from another officer or was it from a witness or what?

"THE WITNESS: Yes, I think the information he specifically is speaking of came from another officer.

"THE COURT: Another officer?

"THE WITNESS: Yes, sir.

"THE COURT: Your objection is sustained."

█ In order for a complaint concerning the exclusion of evidence to be considered by an appellate court, the record must show what the excluded testimony would have been. Absent a showing of what such testimony would have been, or an offer of a statement concerning what the excluded evidence would show, nothing is presented for review. *Rumbaugh v. State*, 629 S.W.2d 747 (Tex.Cr.App.1982); *James v. State*, 546 S.W.2d 306 (Tex.Cr.App.1977). The record before us contains no evidence of what the excluded testimony would have been, much less what it would have shown. We are unable to review the merits of appellant's ground of error. Furthermore, other evidence was adduced at trial, specifically appellant's own confession, which if believed would have shown that the co-defendant was the actual killer. This ground of error is overruled.

Appellant has filed a supplemental brief in which he alleges four additional grounds of error. In his first additional ground of

error, appellant argues that his conviction and sentence of death are invalid under *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982). In *Enmund*, the United States Supreme Court reversed the defendant's conviction because it was never proven that Enmund killed the deceased, attempted to kill the deceased, intended that a killing take place or intend that lethal force be employed in the course of the crime. The Supreme Court wrote that in a case such as *Enmund*, where the defendant was clearly not the triggerman, the focus must be on the defendant's culpability, not on the culpability of those who did the actual killing and robbery:

> "... for we insist on 'individualized consideration as a constitutional requirement in imposing the death sentence,' *Lockett v. Ohio*, 438 U.S. 586, 605, 98 S.Ct. 2954, 2965, 57 L.Ed.2d 973 (1970) (footnote omitted), which means that we must focus on 'relevant facts of the character and record of the individual offender.' *Woodson v. North Carolina*, 428 U.S. 280, 304, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976)."

We are not faced with the *Enmund* situation in the instant case, however. The jury heard conflicting evidence as to who was the actual killer, the appellant or his co-defendant, Kelvin Kelly.

Viewing the evidence in the light most favorable to the verdict, the evidence shows that appellant and Kelly, who both lived in the same apartment complex as the victim, were walking through the complex when they passed the open door of the victim's apartment. Appellant told Kelly that he wanted his (appellant's) gun, a .25 automatic, because there might be something in the victim's apartment he could steal. Appellant retrieved his gun and entered the victim's apartment. Kelly meanwhile was standing outside of the victim's apartment. Kelly heard the victim scream, "Oh, my God" and he rushed into the apartment to see what was happening. Kelly, standing in the living room, could hear appellant talking to the victim in one of the bedrooms. Appellant ordered the victim to undress. After she had complied, he ordered her to get into a closet. Kelly testified that at this point he tried to get the appellant to leave but appellant pointed the gun at Kelly and told him to look around the apartment for valuables. While Kelly was looking around, he heard the front door of the apartment slam. The victim's three-year-old daughter had entered the apartment. Appellant put the little girl in the closet with her mother. Soon appellant made the victim come out of the closet and sit on the bed. When appellant demanded that the victim engage in sexual intercourse with him, she told him she could not since she was having her period. When he suggested that she engage in fellatio with him, she refused and began crying. Appellant became upset. He put his pistol to her head, covered it with a pillow and shot her twice, killing her.

■ The victim's daughter testified that she only saw one person in the apartment at the time of her mother's murder. Her description of the killer matched appellant. Because there is evidence which shows appellant was the triggerman, we hold that *Enmund v. Florida* does not apply to the instant case. This ground of error is overruled.

In his remaining grounds of error, appellant complains that the jury charge at the guilt-innocence phase of the trial was faulty because it allowed the jury to convict appellant without making a finding that appellant was the actual killer or merely a party to the offense.

The court charged the jury on the law of parties pursuant to V.T.C.A., Penal Code, Section 7.01(a), Section 7.02 and Section 15.02(a) and (b). The application paragraph of the charge reads as follows:

> "Now, if you find from the evidence beyond a reasonable doubt that on or about the 6th of February, 1980, in Harris County, Texas, the Defendant, Darryl Elroy Stewart, did while in the course of committing or attempting to commit burglary of a habitation, owned by William

E. Melton, intentionally caused the death of Donna Kate Thomas by shooting her with a gun, then you will find the Defendant guilty of Capital Murder, as charged in the Indictment. Or if you find from the evidence beyond a reasonable doubt that on or about the 6th day of February, 1980, in Harris County, Texas, that Kelvin Kelly and Darryl Elroy Stewart entered into a conspiracy to burglarize the habitation of William E. Melton, and that pursuant thereto they did carry out or attempt to carry out such conspiracy to commit burglary, and while in the course of committing such burglary, if any, Kelvin Kelly did intentionally cause the death of Donna Kate Thomas by shooting her with a gun and that the Defendant, Darryl Elroy Stewart, pursuant to said conspiracy, if any, with the intent to promote, assist, or aid Kelvin Kelly in the commission or attempted commission of the said burglary, then and there, at the time of the shooting, if any, was acting with and aiding Kelvin Kelly in the execution or attempted execution of said burglary, and that the shooting of Donna Kate Thomas followed in the execution of the conspiracy and in furtherance of the unlawful purpose of Kelvin Kelly and Darryl Elroy Stewart to commit the burglary, and that the shooting of Donna Kate Thomas was an offense that should have been anticipated as a result of the carrying out of the conspiracy, then you will find the Defendant, Darryl Elroy Stewart, guilty of Capital Murder as charged in the indictment.

"If you do not believe or if you have a reasonable thereof, (sic) then you will find the Defendant not guilty."

The appellant made the following objections to the charge:

"... Number two, we object to the Court's charge as given to the jury for not requiring the jury to determine, if they find the Defendant guilty, whether he is guilty as a direct actor, that is, the individual who is directly responsible for the death of the deceased through his own immediate act, or whether they find him guilty as a party, as that term is defined in the Court's charge.

"We want a charge that would require the jury to unanimously determine which of the two he is responsible, under which theory he would be responsible, and that that verdict be unanimous. Further, that the verdict sheet at the conclusion of the charge contains options whereby the jury may find him guilty either as a direct actor and perpetrator of the said offense of murder or guilty as a party."

This was overruled.

Appellant now argues that under *Enmund* the State is required to obtain a jury finding that the defendant was himself the killer, or that he intended to kill or attempted to kill. However, *Enmund* does not require such a finding. Rather, *Enmund* requires some proof that the defendant either killed, attempted to kill, intended to kill or contemplated a killing before a sentence of death may be imposed.

Furthermore, Article 37.07, Section 1(a) provides that "[T]he verdict in every criminal action must be general." Other than the provisions in Article 37.071, V.A.C.C.P., Texas jurisprudence has no authority allowing the submission of special issues to a jury in a criminal case. The trial judge acted properly in denying appellant's request.

Furthermore, Texas law *does* provide that an individual may be found guilty of an offense if he was a party to the offense. Sections 7.01, 7.02, supra. And under *Enmund,* an individual may be found guilty of capital murder and sentenced to death even if he was not the triggerman but contemplated the use of lethal force in the commission of the offense.

Since *Enmund* does not require the type of jury finding which appellant requested, we find the trial court properly overruled appellant's objection to the charge at the guilt-innocence phase of the trial. These grounds of error are overruled.

The judgment is affirmed.

CLINTON, Judge, dissenting.

Given the facial narrowness of Article 37.071(b)(2), V.A.C.C.P.[1] it is certainly not specious to argue, as did appellant, that we cannot be certain that the jury reached its decision with due consideration to whatever mitigating circumstances appellant could proffer. Yet, Judge McCormick's reply seems intentionally unresponsive: the *appellant* did not *prove* that the jury did *not* properly consider mitigating circumstances.[2] In truth, no party has a "burden of proof" in this matter. The State of Texas, however, does have duties to ensure an accused those processes which are due under the law generally, and that the jury is given adequate guidance in its deliberations specifically.

Since 37.071(b)(2) was tentatively approved in *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976), this Court has brooked no argument that (b)(2) may, standing alone, be an inadequate guide when it comes to consideration of mitigating circumstances. Rather, as Judge McCormick sees it, the question of guidance was "settled" in *Quinones v. State,* 592 S.W.2d 933, 947 (Tex.Cr.App. 1980), wherein Judge Dally opined:

"The jury can readily grasp the logical relevance of mitigating evidence to the issue of whether there is a probability of future criminal acts of violence."

No doubt this is true; its significance, however, is unclear. For, in answering (b)(2), a jury would decidedly consider the range and severity of the defendant's prior criminal conduct; yet truly "mitigating" evidence [3]—such as a mental disease or defect, a deprived, abusive childhood or the youth of the defendant—while militating against a death sentence in general, surely has tremendous specific probative weight in favor of answering the future dangerousness question "yes." Thus, any mitigating force such evidence might have in the minds of jurors in a particular case is emasculated by the narrow language of (b)(2), when unaided by an instruction as to the permissible use of that "mitigating" evidence.

A brief look at *Eddings v. Oklahoma,* 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) will illuminate the point. There, the Supreme Court held that the sentencer is required to consider the following evidence which the court itself characterized as "mitigating:" that the 16 year old Eddings was a child of divorce and had lived without rules or supervision since he was five; that his mother was an alcoholic and a prostitute; that at the age of 14 he was sent to live with his father who attempted to control the disturbed adolescent with excessive physical punishment; that Eddings was emotionally scarred; and that his mental development was at a level several years below his age.

Depending on one's perspective and focus, such evidence is at once damning *and* mitigating. It is this very paradox that renders asking the jury questions only in the language of 37.071(b) constitutionally insufficient. The truth is that many vi-

---

1. "Whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." [Hereinafter 37.071(b).]

2. Appellant also argues the term "deliberately," as employed in V.A.C.C.P., Article 37.071(b)(1), should be defined. I stand by my dissenting opinion in *Russell v. State,* 665 S.W.2d 771 (Tex. Cr.App. 1983).

3. "Mitigate" means "to cause to become less harsh or hostile: mollify ... to make less severe or painful: alleviate." Webster's Seventh New Collegiate Dictionary (1969).

    In the context of deciding the penalty in a capital case in Texas, the effect of "mitigating" evidence is presumably a basis for bestowing mercy on the defendant.

    If not, and there is no room for mercy, perhaps the Supreme Court will have to acknowledge what it denied in *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976): the Texas scheme sets up a mandatory death sentence much like those condemned as unconstitutional in *Roberts v. Louisiana,* 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976), and *Woodson v. North Carolina,* 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976). See also *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); and *Roberts v. Louisiana,* 431 U.S. 633, 97 S.Ct. 1993, 52 L.Ed.2d 637 (1977).

cious criminals suffered at the hands of irresponsible and unfit parents; common knowledge holds that many violent criminals were physically abused children and that the American crime rate rises and falls in direct proportion to the number of our citizens who happen to be under 35. When we prosecute such a person and place in a jury's hands the decision of whether that person is to live or die, is it enough to protest that we have allowed him to adduce mitigating evidence, yet take no measure to ensure the jury's understanding of their role in regard to that evidence? I think not. At risk of redundancy, a history of deprivation and misfortune may, in some cases, moderate blameworthiness, even while the same history may establish the probability of a defendant committing future acts of violence. Or, similarly, the very mental or emotional disturbance which impairs a defendant's ability to conform to the law might lead the jury to exercise mercy.

In sum, a defendant is entitled to jurors whose consideration of mitigating circumstances is not limited to whether that evidence does or does not indicate future dangerousness. The jury must not be precluded in law or in practice from according independent weight to factors that are mitigating but perhaps irrelevant to the probability issue of future dangerous conduct. See *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); and, *Eddings*, supra; cf. *Woodson v. North Carolina*, 428 U.S. 280, 286, 96 S.Ct. 2978, 2982, 49 L.Ed.2d 944 (1976). Rather than acknowledge the circumstantial inadequacy of 37.071(b)(2) to accomplish the mandate of *Lockett* and its progeny, a majority of this Court has blithely said, time and again, that in considering whether to impose a death sentence the jury must be allowed to consider whatever evidence of mitigating circumstances the defense can bring before it. But they also have repeatedly denied the utility, much less necessity, of informing the jury that they *may* so consider that evidence.

If we are to ensure the constitutionality of 37.071, we must not only give lip service to broadly *interpreting* it; we must also apply it as interpreted. This could easily be effected by requiring a jury instruction on mitigating evidence.

It is folly for the Court to first acknowledge a capital murder defendant's right to produce mitigating evidence, give the jury no guidance in its use, then presume these 12 laypersons know the holdings of *Lockett* and *Eddings* until the defendant affirmatively proves the contrary!

The defendant is entitled to jurors who will consider all mitigating circumstances. Rather than rely on speculation and assumptions, as does the Court today, defense counsel would be advised to rely on prospective jurors' promises to give consideration—independent of the narrow special issues—to whatever mitigating circumstances the defendant may adduce for the purpose of deciding whether "mercy" is appropriate in the case. Counsel should take the responsibility upon themselves to inform the jurors of the holdings of *Lockett* and *Eddings* which constitute a part of "the law applicable to the case upon which the defense is entitled to reply ... as mitigation ... of the punishment," and exercise challenges for cause to jurors who cannot follow them. Article 35.16(c)(2), V.A.C.C.P.[4] If the Court is sincere in its intentions to comply with *Lockett* and its progeny, such a procedure should be welcomed with open arms.

Because a majority do not evince that intention today, I dissent.

TEAGUE and MILLER, JJ., join.

---

4. Counsel should also, of course, request an    instruction on mitigating circumstances.