Affirmed and Memorandum Opinion filed August 21, 2003









Affirmed
and Memorandum Opinion filed August 21, 2003.

 

 

 

 

 

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-01-00774-CR

____________

 

CAREY BERNARD CALDWELL A.K.A.
BERNARD TALIB DIN HASAN,
Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 180th District Court

Harris County, Texas

Trial Court Cause No. 856,214

 



 

M
E M O R A N D U M   O P I N I O N

Appellant,
Carey Bernard Caldwell, a.k.a. Bernard Talib Din Hasan, was convicted by a jury
of aggregate theft and sentenced to fifty-five years=
imprisonment.  In four points of error,
appellant claims (1) the evidence is legally and factually insufficient, (2)
the trial court erred in excluding certain cross-examination testimony, and (3)
the trial court abused its discretion in denying appellant=s
motion for new trial without a hearing. 
We affirm.

 








Background

Appellant
and his co-defendant wife, Maria Elena Gonzalez, owned and operated TDH
Investments, Unlimited, which provided investment opportunities and advice to
the Hispanic community.  Investors were
grouped into Acartels@
that pooled their money.  Each individual
was required to invest a minimum of $5000.00. 
Originally, the cartels invested in real estate; however, the focus
eventually changed to include international investment programs.  One such program was trading rice for
diamonds.

The
Arice
for diamonds@ idea purported to pool investors=
money together in order to purchase large amounts of rice on the international
market.  It would then be sold to
countries needing food in exchange for diamonds.  Appellant created TDH, International in order
to conduct these oversees exchanges.  In
addition, he created and served as president of World Resources Management, an
Antiguan corporation that later became known as Unalat.  Two separate Antiguan bank accounts were
opened at American International Bank (AIB) and Antigua Overseas Bank.  Investor monies were deposited into the
Antiguan bank accounts, the records of which were unavailable at trial.  However, records from Bank One in
Houston  indicated that TDH received wire
transfers from the Antiguan banks and eventually TDH borrowed against the
remaining money at AIB.








In
1997, several of the investors unsuccessfully sought to retrieve their Aearnings@
from appellant.  A civil suit
resulted.  The Harris County District
Attorney=s
Office began investigating appellant and, in February 1998, seized records at
TDH=s
office, which subsequently closed to the public.  The records contained no evidence of any Arice
for diamonds@ purchases.  The indictment named 58 complainants and
charged appellant with theft by deception. 
At trial, the jury charge included only nine complainants and
specifically accused appellant of aggregate theft by deception, Aby
promising performance that affected the judgment of the complainants in the
transaction which the [appellant] did not intend to perform and/or which the
defendant knew would not be performed.@ 
The State=s theory of the case was that
appellant promised the complainants that their investments would fund a Arice
for diamonds@ trade and had complainants known
their money would not go towards these investments, they would not have given
money to appellant.  A jury found
appellant guilty and sentenced him to fifty-five years=
imprisonment.  This appeal followed.  

Legal
and Factual Sufficiency

In
his first and second points of error, appellant contends that the evidence is
legally and factually insufficient to support his conviction.  Specifically, he contends there is
insufficient evidence to prove the complainants= judgments were affected by any
promise made by appellant.

In
reviewing the legal sufficiency of the evidence, we view the evidence in the
light most favorable to the verdict.  See
Jackson v. Virginia, 443 U.S. 307, 319 (1979).  We accord great deference Ato
the responsibility of the trier of fact [to fairly] resolve conflicts in the
testimony, to weigh the evidence, and to draw reasonable inferences from basic
facts to ultimate facts.@ 
Id. at 319.  We presume
that any conflicting inferences from the evidence were resolved by the jury in
favor of the prosecution, and we defer to that resolution.  Id. at 326.  In our review, we determine only whether Aany rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt.@  Id. at 319.








The
essential elements of the felony offense of aggregate theft are found in
section 31.03(a) of the Texas Penal Code, which provides that a person commits
an offense Aif he unlawfully appropriates
property with intent to deprive the owner of the property.@  Tex.
Pen. Code Ann. ' 31.03(a) (Vernon Supp. 2002).  Appropriation of property is unlawful if it Ais
without the owner=s effective consent.@  Tex.
Pen. Code Ann. ' 31.03(b)(1) (Vernon Supp.
2002).  AConsent@
is not effective if it is induced by deception. 
See Tex. Pen. Code Ann.
'
31.01(3)(A) (Vernon Supp. 2002). 
Deception means promising performance that the actor does not intend to
perform or knows will not be performed.  Tex. Pen. Code Ann. '
31.01(1)(E) (Vernon Supp. 2002).  Failure
to perform the promise without other evidence of intent or knowledge is not
sufficient proof that the actor did not intend to perform or knew the promise
would not be performed.  Id.  Criminal intent may be inferred from
surrounding circumstances.  Coronado
v. State, 509 S.W.2d 373, 374 (Tex. Crim. App. 1974).  

Employing
our deferential standard of review, we conclude that a rational trier of fact
could have found beyond a reasonable doubt that appellant committed the offense
alleged in his felony indictment.  The
nine complainants testified in great detail concerning their dealings and
transactions with appellant.  Appellant
promised all nine complainants that their money would be invested in
import/export trading accounts. 
Specifically, they were told that it would be utilized to buy rice
and/or grain that would later be exchanged on the international market for
diamonds and gold.  The trading accounts
were to be established and maintained by Unalat, which appellant represented as
an Ainternational
business corporation@ located in Antigua.  The complainants made payments directly to
Unalat while being unaware that appellant owned and operated it.  The complainants invested amounts ranging
from $5,000 to over $97,000, which represented many of their life savings and
death benefits of loved ones.  Appellant
promised high rates of return and repeatedly persuaded the complainants to not
pull their money out of the investment accounts by convincing them it would
result in high tax consequences.  Each
complainant testified that had he known his money was not being used in the Arice
for diamonds@ program he would not have invested
with appellant.








The
complainants eventually became aware of the civil lawsuit against and criminal
investigation of appellant.  Through
periodic account statements, appellant continued to represent that the
investments were earning significant profits, which the complainants never
actually received.  As concern about the
scheme spread, investors began to seek repayment on their accounts.  Appellant refused.  First, appellant avoided phone calls and
refused to meet with the complainants. 
Second, appellant persuaded the complainants not to seek repayment or
join the civil lawsuit.  If they did so,
appellant claimed they would be the last to receive payouts and most of their
money would be spent on lawyers. 
Finally, appellant sent a letter to investors claiming that the Antiguan
trading partner, Unalat, was the source of the repayment delays.  He failed to disclose, however, that he
founded and served as president of Unalat. 
Only one complainant, Mendieta, ever received any payout and he recouped
only $10,000 of his $40,000 investment.

Bank
account records seized from TDH offices revealed that between 1994 and 1998,
over $3 million of investors= money had been deposited or
transferred to the Antiguan bank accounts. 
Purportedly, this was necessary to participate in the Arice
for diamonds@ exchange.  However, the records did not indicate that
any such transactions had taken place. 
To the contrary, the records showed appellant transferred approximately
$1.3 million back into Houston bank accounts for his personal use.  The records further indicated that TDH took
out loans against the Antiguan accounts and that the loan proceeds were
subsequently wired back to Houston for appellant=s use.

David
Pilant, a Harris County fraud examiner, testified that such a set up
constituted a standard pyramid scheme that could continue for years.  As long as individuals continued to invest,
it would appear on paper that everyone was earning large profits.  However, when money ceased to come in and
people began to pull their money out, the scheme would fail.

All
of the complaining witnesses testified that they had paid appellant based on
his assurances that he would grow their investment money.  Only one of the complainants ever received a
payout, the remainder received nothing from appellant and there is no
indication that he ever intended to return anything.  Based on the foregoing evidence of the acts,
words, and conduct of appellant and the surrounding circumstances, a rational
trier of fact could have found beyond a reasonable doubt that appellant had the
intent to unlawfully deprive each complainant of the money he or she invested
with him at the time the money was invested. 
Accordingly, the evidence was legally sufficient to support appellant=s
conviction, and his first point of error is overruled.  








We
conduct a factual sufficiency review by asking whether a neutral review of all
the evidence demonstrates the proof of guilt is so obviously weak as to
undermine confidence in the jury=s determination or the proof of
guilt, although adequate if taken alone, is greatly outweighed by contrary
proof.  Johnson v. State, 23
S.W.3d 1, 11 (Tex. Crim. App. 2000).  We
may set aside the jury=s verdict only if it is so contrary
to the overwhelming weight of the evidence as to be clearly wrong and
unjust.  Clewis v. State, 922
S.W.2d 126, 129 (Tex. Crim. App. 1996). 
Although we review the fact finder=s weighing of the evidence, and we
are authorized to disagree with the fact finder=s determination, our evaluation should
not substantially intrude upon the fact finder=s role as the sole judge of the
weight and credibility given to witness testimony.  Johnson, 23 S.W.3d at 7.  In particular, we must defer to the jury=s
determination concerning what weight to give contradictory testimonial
evidence, because resolution often turns on an evaluation of credibility and
demeanor, an evaluation better suited for jurors who were in attendance when
the testimony was delivered. Id. at 8. 
A proper factual sufficiency review Amust include a discussion of the
most important and relevant evidence that supports the appellant=s
complaint on appeal.@ 
Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

Appellant
points to defense witness testimony that allegedly contradicts the complainants=
claims.  Nine of the eleven defense
witnesses were investors, who, the appellant argues, did not believe they had
been deceived.  Specifically, appellant
points to the testimony of four defense witnesses who were originally named as complainants
in the indictment: Sara Morrell, Maria Almanza, Erasto Almanza, and Homer
Cuellar.  Appellant claims their
testimony demonstrates that the investors had not been deceived, but rather
demonstrated a rational understanding of the agreements.  That four non-complaining witnesses did not
believe they were deceived is no evidence that the complainants were not
deceived.  Furthermore, the weight to be
given conflicting testimony lies within the sole province of the jury, and the
reviewing court must show deference to the jury=s determination.  See Cain v. State, 958 S.W.2d 404,
408-09 (Tex. Crim. App. 1997).  








Although
appellant does not include any reference to documentary evidence in his claim
of factual insufficiency, we find it necessary to address some of the defense
trial exhibits.  The State seized all
records from appellant=s office and claimed that they
contained no evidence of a Arice for diamonds@
swap.  While we agree that there is no
evidence that appellant ever actually purchased any rice or diamonds as
promised to complainants, the documentary evidence did include several items
making reference to the International Diamond Cartel (IDC).  In July 1993, after attending a National
Business Group meeting, appellant wrote to Melvin Ford of IDC, expressing an
interest in purchasing diamonds.  Ford
responded to this correspondence indicating that the African company involved
had already entered into an exclusive arrangement with an Israeli company.  The documents also contained an IDC training
manual detailing the purchasing process, which appellant used.  An order form to receive additional training
manuals contained the address of Anderson, Armstrong & Fowler in
Philadelphia, Pennsylvania.  

Other
records seized included correspondence with the Antiguan banks.  These records indicate that in 1994,
appellant opened at least four Arice swap@
and two Amixed@
accounts with deposits totaling $124,000. 
In 1995, appellant opened eight more Arice swap@
and twelve Aprecious metal@
accounts.  Other than the transfers back
to Houston, there is no further evidence indicating whether any actual
commodity purchases took place.

The
documentary evidence also showed appellant attended a second International
Trade Conference in November 1995. 
Furthermore, notes and contracts indicated that at least two of
appellant=s employees were researching the
import-export business.

Finally,
we note that the State failed to produce documentary evidence showing what
happened to the money once it was transferred to the Antiguan bank.  However, it is clear that large amounts of
the overseas deposits were both borrowed against and transferred back to
Houston for appellant=s use.  The State=s fraud investigator indicated that
this constitutes a classic pyramid scheme. 
Furthermore, appellant made false representations to the complainants
regarding the investments.  Taking the
evidence as a whole and viewing it in a neutral light, we cannot say the jury=s
verdict was clearly wrong or manifestly unjust. 
We overrule appellant=s second point of error.








Exclusion
of Evidence

Appellant
contends in his third point of error that the trial court erred in refusing to
allow appellant to cross-examine the complaining witnesses about how he
allegedly deceived them or what promises he made to them that he failed to
perform.  Specifically, appellant
contends that he should have been allowed to question witnesses about Awhat
promises had been made to the complainants at the time they gave over their
money, at what point in the transaction they thought he had appropriated money,
or whether appellant stole money from them.@ 

In
order for a complaint concerning the exclusion of evidence to be considered by
an appellate court, the record must show what the excluded testimony would have
been.  Stewart v. State, 686
S.W.2d 118, 122 (Tex. Crim. App. 1984); Oldham v. State, 5 S.W.3d 840 (Tex. App.CHouston [14th Dist.] 1999, pet ref=d).  Absent a showing of what such testimony would
have been, or an offer of a statement concerning what the excluded evidence
would show, nothing is presented for review. 
Stewart, 686 S.W.2d at 122. 
The record before us contains no evidence of what the excluded testimony
would have been, much less what it would have shown.  Consequently, nothing is presented for our
review.  This point of error is
overruled.

Motion
for New Trial

Appellant
claims in his fourth point of error that the trial court abused its discretion
by denying his motion for new trial without holding a hearing.  Appellant alleged in his motion that the
jurors improperly assessed punishment by basing it on the number of
complainants listed in the original indictment. 









The
right to a hearing on a motion for new trial is not an absolute right.  Reyes v. State, 849 S.W.2d 812, 815
(Tex. Crim. App. 1993).  As a
prerequisite to obtaining a hearing, motions for new trial must be supported by
affidavit, either of the accused or someone else specifically showing the truth
of the grounds of attack.  Id. at
816.  Further, a hearing is not required
when the matters raised in the motion for new trial are subject to being
determined from the record.  Id.     

Jury
misconduct is one of several bases on which a motion for new trial may be
granted.  See Tex. R. App. P. 21.3(c),(g).   A movant is entitled to a hearing on the
motion for a new trial when the affidavit demonstrates that reasonable grounds
exist for believing that jury misconduct occurred.  See McIntire v. State, 698 S.W.2d 652,
658 (Tex. Crim. App. 1985).

Here,
stand-by trial counsel stated in his affidavit that members of the jury told
him that they had assessed punishment based on the number of complainants
originally named in the indictment.  The
jury requested the indictment from the trial judge, who informed the jury that
it was not in evidence.  In the absence
of the actual indictment, the jury settled on 55 as the number of complainants,
although the actual number was 58 and only nine of those were presented at
trial.  Stand-by counsel argued that this
information showed the jury Ahad completely ignored the Court=s
instructions about disregarding the indictment as evidence and not deciding
[appellant=s] punishment by lot or chance or
matters not in evidence.@

Based
on this information, the trial court did not abuse its discretion by not
granting a hearing on appellant=s motion for new trial.  The matters raised in the motion were
discernible from the record.  The trial
court had all the available information before it to make a determination
whether the jury improperly came to its verdict by lot. The trial court is
precluded from hearing testimony or affidavits of jury members regarding
deliberations.  Tex. R. Evid. 606(b). 
By generally prohibiting jurors from testifying as to matters and
statements occurring during deliberations, rule 606(b) makes proving jury
misconduct more difficult than under the prior rules.  Hicks v. State, 15 S.W.3d 626, 630 (Tex. App.CHouston [14th Dist.] 2000, pet. ref=d).  Proof of jury misconduct may be proved by
other means, such as through the testimony of a non-juror with personal
knowledge of the misconduct.  Id.
(citing Mayo v. State, 708 S.W.2d 854, 856 (Tex. Crim. App. 1986)).  








Stand-by
counsel=s
affidavit contained three primary pieces of evidenceCthe
hearsay statements of jurors, the jury=s request for the indictment, and
the actual sentence.  The first of these,
the hearsay statements, would be inadmissible under 606(b) and as hearsay.  The allegations in a motion for new trial
must be proved by competent evidence, which must be received by the court
before it can be considered.  Lincicome
v. State, 3 S.W.3d 644, 646 (Tex. App.CAmarillo
1999, no pet.).  The trial court could
not consider inadmissable jury statements presented through a hearsay
affidavit.  See id. at 647.  Furthermore, it could not hear direct
testimony of the jurors regarding whether they decided the verdict by lot.  See Hines v. State, 3 S.W.3d 618, 621 (Tex. App.CTexarkana 1999, pet. ref=d).  

This
leaves the jury=s request for the indictment and the
actual sentence as the only admissible evidence available to determine whether
jury misconduct occurred.  A trial court
does not abuse its discretion in refusing to hold a motion-for-new-trial
hearing when the affidavits do not supply reasonable grounds entitling the
accused to the relief sought.  King v.
State, 29 S.W.3d 556, 569 (Tex. Crim. App. 2000).  The evidence presented by appellant did not
entitle him to a hearing because there was no other admissible evidence
available to the trial court.  The jury
request and sentence alone do not support a conclusion that the jury came to
its punishment decision by lot or quotient. 
In the absence of more evidence, the trial court acted within its
discretion in not holding a hearing.

Appellant=s
fourth point of error is overruled and the judgment of the trial court is
affirmed.

 

 

 

/s/        Leslie
Brock Yates

Justice

 

Judgment rendered and Opinion filed
August 21, 2003.

Panel consists of Justices Yates,
Anderson, and Frost.

Do Not Publish C
Tex. R. App. P. 47.2(b).