# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00456-CR

**Dwayne Edward Nash, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BURNET COUNTY, 33RD JUDICIAL DISTRICT
### NO. 39596, HONORABLE LLOYD DOUGLAS SHAVER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Dwayne Edward Nash of the offense of murder. *See* Tex. Penal Code § 19.02. Punishment was assessed at 75 years' imprisonment. In two points of error on appeal, Nash asserts that he was denied his constitutional right to confront one of the State's witnesses at trial and that the State failed to disclose impeachment evidence relating to that same witness. We will affirm the judgment.

## BACKGROUND

Nash was charged with intentionally or knowingly causing the death of Coy Dowdle, the adult son of Nash's live-in girlfriend, Sue Dowdle. The evidence presented at trial tended to show that, on or about November 22, 2009, Nash and Coy got into a violent altercation at Sue's house and that, by the end of the fight, which had involved knives and possibly other weapons, Coy was on the floor, bleeding to death. Sue, who was present during the altercation, called 911

after the fight had ended and reported that her son had accidentally stabbed himself. When EMS arrived, Coy was dead and Nash was sitting on the floor, covered in blood. Law enforcement arrived shortly thereafter and soon concluded that a crime had been committed. The subsequent criminal investigation ultimately led to Nash being indicted for murder. The case was tried before a jury, which found Nash guilty as charged and assessed punishment as noted above. The district court sentenced Nash in accordance with the jury's verdict. Subsequently, Nash filed a motion for new trial, which was denied by the district court following a hearing. This appeal followed.

## ANALYSIS

**Exclusion of evidence**

In his first point of error, Nash asserts that the district court denied him his constitutional right to confront the witnesses against him when it excluded evidence that tended to impeach one of the State's witnesses. The witness was Anthony "Tony" McDaniel, a neighbor of the Dowdles who did carpentry work for Coy and who was familiar with the relationship between Sue and Nash. According to McDaniel, Sue and Nash would often argue and, following their arguments, Sue would call Coy and complain about Nash. McDaniel testified that this upset Coy, who was worried about his mother's well-being.

On cross-examination, defense counsel attempted to elicit testimony from McDaniel concerning his past drug use and criminal history. However, the district court did not allow counsel to question McDaniel extensively about these matters, sustaining the State's objections to such questions. In response to the State's objections, Nash did not attempt to explain why he believed the evidence was admissible or how its exclusion adversely affected his defense or otherwise

2

violated his rights.  Instead, he requested a bill of exceptions and made the following offer of proof outside the presence of the jury:

Q      Sir, you have been convicted of possession of a controlled substance, right?

A      That's correct.

Q      And being convicted of possession of a controlled substance, do you have a history with drugs?

A      That's correct.

Q      What is [] your drug of choice?

A      Methamphetamine.

Q      How long have you used methamphetamine?

A      Thirty years.

Q      And you agree with me that methamphetamine is a drug that is addictive?

A      Absolutely.

Q      And that its use is not necessarily one time but over and over and over?

A      That's correct.

Q      Have you used methamphetamine intravenously?

A      Yes.

Q      And using methamphetamine intravenously gets into your system quicker, more powerful, correct?

A      Yes.

Q      Would you agree with me that methamphetamine, especially after having put into your body intravenously, is extremely addictive?

A      Extremely what?

Q      Addictive.

A      Yes.

Q      My question to you is:  Were you under the influence of methamphetamine on any of those three occasions you testified about [when] you went with Coy to Sue Dowdle and Eddie Nash's home?

A      No.

Q      When is the last time you had used methamphetamine prior to any of those events?

A      Before I went to prison.

Q      And when is the last date that you used methamphetamine?

A      Oh, I don't know that.

Q      What year?

A      '05.

Q      And why is your parole being revoked?

A      Failure to maintain residence, couldn't pay my rent.

Q      And that's the sole reason why you are being revoked on parole?

A      Failure to report.

Q      And there's no other violations?

A      There's no other violation.

Q      And were you aware of Coy having a drug history?

A      Yes.

Q      And what drug history were you aware of Coy having?

A      I knew when he was a teenager he drank and did a little bit of everything back then, I guess.

4

Q      But in the 10 to 12 weeks you worked for him, you weren't aware of his drug history?

A      Oh, no.

Q      And what causes you to be here today to testify?

A      I was subpoenaed.

Q      And has anybody with the State made any representation to you about the outcome of your parole revocation based on your testimony today?

A      Absolutely not.

Counsel then stated, "That completes my bill, Your Honor." Counsel did not argue any possible grounds on which he thought the above testimony was admissible, and he cited to no case law, constitutional provisions, or rules of evidence as authority for why he believed the testimony should be admitted. The district court made the following ruling: "You'll be allowed to ask him if he has a prior conviction for a felony or a misdemeanor involving moral turpitude. He'll answer that and that limits your inquiry. Go on to something else." Counsel did not object to the district court's ruling on any ground. Instead, he complied with the district court's instructions and asked McDaniel if he was testifying on behalf of the State and whether he was a convicted felon. To both of these questions, McDaniel answered, "Yes." Counsel then stated, "Pass the witness."

Now, for the first time on appeal, Nash argues that the exclusion of the above evidence, specifically the testimony relating to McDaniel's pending parole revocation, violates Nash's constitutional right to confront the witnesses against him. His specific argument, as set out in his brief, is the following: "Because McDaniel was on parole and had a parole revocation pending, Appellant had the constitutional right, under the Confrontation Clause, to fully examine McDaniel

5

as to any 'possible biases, prejudices, or ulterior motives' he may have had for giving the testimony he did." *See* U.S. Const. amend. VI; *Davis v. Alaska*, 415 U.S. 308, 316 (1974); *Hammer v. State*, 296 S.W.3d 555, 562-63 (Tex. Crim. App. 2009). In response, the State argues that Nash failed to preserve error on this point by not presenting this argument to the district court. In a reply letter brief, Nash asserts that the bill of exceptions was sufficient to preserve error because, in his view, "[t]he trial court and counsel for the State each understood exactly what defense counsel was asking and what he was attempting to do."

We agree with the State that Nash failed to preserve error. As a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely request, objection, or motion that stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context; and that the trial court ruled on the request, objection, or motion, either expressly or implicitly. Tex. R. App. P. 33.1(a). As a general rule, to preserve error in the exclusion of evidence, the proponent is required to make an offer of proof showing what the excluded testimony would have been and to obtain a ruling on whether such testimony is admissible. *See Williams v. State*, 937 S.W.2d 479, 489 (Tex. Crim. App. 1996); *Stewart v. State*, 686 S.W.2d 118, 122 (Tex. Crim. App. 1984); *see also* Tex. R. Evid. 103(a)(2). However, to preserve error in the exclusion of evidence, "it is not enough to tell the judge that evidence is admissible." *Reyna v. State*, 168 S.W.3d 173, 177 (Tex. Crim. App. 2005). "The proponent, if he is the losing party on appeal, must have told the judge why the evidence was admissible." *Id*. This is particularly true when the basis for admitting evidence could be either under the Rules of Evidence or the Confrontation Clause, which involve different standards for

6

admissibility and policy considerations. "When a defendant's objection encompasses complaints under both the Texas Rules of Evidence and the Confrontation Clause, the objection is not sufficiently specific to preserve error." *Id*. at 179.

Here, Nash never explained to the district court why he believed the evidence was admissible, either under the Rules of Evidence or the Confrontation Clause. In fact, he said nothing at all about his reason for eliciting the testimony, and, contrary to Nash's assertion in his letter brief, there is nothing in the record which suggests that the district court or counsel for the State understood what Nash was attempting to do. He could have been attempting to admit the evidence under the Rules of Evidence, which allows for the impeachment of a witness with prior bad acts under a limited set of circumstances, *see* Tex. R. Evid. 613(b), or he could have been attempting to admit the evidence under the Confrontation Clause, which allows for the impeachment of a witness under a broader set of circumstances. *See Davis*, 415 U.S. at 316-17. Because Nash "did not clearly articulate" that the Confrontation Clause demanded admission of the evidence, the district court "never had the opportunity to rule upon" this rationale. *See Reyna*, 168 S.W.3d at 179 (citing *Clark v. State*, 881 S.W.2d 682, 694 (Tex. Crim. App. 1994)). "As the losing party, [Nash] must 'suffer on appeal the consequences of his insufficiently specific offer.'" *Id*. (quoting *Jones v. State*, 843 S.W.2d 487 (Tex. Crim. App. 1992)); *see* Tex. R. App. P. 33.1(a).

Additionally, even if we could conclude that Nash had preserved error, we could not conclude on this record that the district court abused its discretion in excluding the evidence. We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Ramos v. State*, 245 S.W.3d 410, 417-18 (Tex. Crim. App. 2008). The test for abuse of discretion is whether the trial court acted arbitrarily or unreasonably, without reference to any guiding rules or

principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). A trial court abuses its discretion only when its decision "is so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005).

"The Sixth Amendment right to confront witnesses includes the right to cross-examine witnesses to attack their general credibility or to show their possible bias, self-interest, or motives in testifying." *Hammer*, 296 S.W.3d at 561 (citing *Davis*, 415 U.S. at 316). "This right is not unqualified, however; the trial judge has wide discretion in limiting the scope and extent of cross-examination." *Id*.; *see also Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) ("[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness'[s] safety, or interrogation that is repetitive or only marginally relevant.").

In this case, Nash is arguing that evidence concerning McDaniel's pending parole revocation is admissible to show the witness's bias in favor of testifying for the State. However, for such evidence to be admissible, "[t]he proponent of evidence to show bias must show that the evidence is relevant." *Woods v. State*, 152 S.W.3d 105, 111 (Tex. Crim. App. 2004). "The proponent does this by demonstrating that a nexus, or logical connection, exists between the witness's testimony and the witness's potential motive to testify in favor of the other party." *Id*. In other words, a showing must be made that the witness "had the expectation that he would be rewarded for testimony favorable to the State or punished for testimony that was unfavorable to the State." *Id*. at 112. Here, it would not be outside the zone of reasonable disagreement for the

8

district court to conclude that Nash failed to make such a showing. Although McDaniel testified that he had been subpoenaed by the State, no testimony was elicited tending to show that McDaniel expected to be rewarded for testimony favorable to the State or punished for testimony that was unfavorable to the State. In fact, when counsel asked McDaniel if "anybody with the State [has] made any representation to you about the outcome of your parole revocation based on your testimony today," McDaniel answered, "Absolutely not." Accordingly, the district court would not have abused its discretion in concluding that Nash's offer of proof did not establish a nexus between McDaniel's testimony and his parole status, and in excluding the evidence on that ground. *See id.*; *Carpenter v. State*, 979 S.W.2d 633, 634-35 (Tex. Crim. App. 1998); *see also Irby v. State*, 327 S.W.3d 138, 147-48 (Tex. Crim. App. 2010) ("[A] 'vulnerable relationship' based on a witness's pending charges or probationary status does not hover cloud-like in the air, ready to rain down as impeachment evidence upon any and all such witnesses. There must be some logical connection between that 'vulnerable relationship' and the witness's potential motive for testifying as he does."). We overrule Nash's first point of error.

**Failure to disclose impeachment evidence**

In his second point of error, Nash asserts that the State failed to disclose impeachment evidence relating to witness McDaniel. Specifically, Nash claims that McDaniel, instead of having his parole revoked, was released from custody three days following the hearing on Nash's motion for new trial. According to Nash, "an examination of [McDaniel's] parole status shows that the date of his actual release on parole was such that the State and its agents must be deemed to have withheld material exculpatory evidence in violation of Appellant's Due Process rights." "If properly

9

revealed," Nash contends, "that evidence could have been used to impeach McDaniel because of his realistic expectation that the State would help him get an early parole."

Nash's argument implicates the State's duty to disclose certain evidence pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963). A defendant in a criminal case has no general right to pretrial discovery of evidence in the State's possession. *Hall v. State*, 283 S.W.3d 137, 163 (Tex. App.—Austin 2009, pet. ref'd). However, under *Brady* and its progeny, the United States Supreme Court has recognized "what amounts to a federal constitutional right to certain minimal discovery." *Id.* (quoting 42 George E. Dix. & Robert O. Dawson, Texas Practice: Criminal Practice and Procedure § 22.21 (2d ed. 2001)). These authorities hold that "[t]o protect a criminal defendant's right to a fair trial, the Due Process Clause of the Fourteenth Amendment to the United States Constitution requires the prosecution to disclose exculpatory and impeachment evidence to the defense that is material to either guilt or punishment," *Ex parte Reed*, 271 S.W.3d 698, 726 (Tex. Crim. App. 2008), and that the State's failure to comply with this duty constitutes harm requiring reversal and a new trial. *See Hampton v. State*, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002).

To establish a due process violation under *Brady*, a defendant must show that: (1) the State failed to disclose evidence in its possession; (2) the withheld evidence is favorable to the defendant; and (3) the evidence is "material," that is, there is a reasonable probability that had the evidence been disclosed, the outcome of the trial would have been different. *Webb v. State*, 232 S.W.3d 109, 114 (Tex. Crim. App. 2007) (citing *Hampton*, 86 S.W.3d at 612). The evidence may be material to either guilt or punishment. *Brady*, 373 U.S. at 87. Evidence that could be used effectively to impeach a prosecution witness is evidence favorable to the defendant for *Brady*

10

purposes. *See United States v. Bagley*, 473 U.S. 667, 676 (1985); *Arroyo v. State*, 117 S.W.3d 795, 798 n.1 (Tex. Crim. App. 2003).

This issue is being raised for the first time on appeal. *Brady* claims are typically raised in a motion for new trial. *See, e.g.*, *Clarke v. State*, 270 S.W.3d 573, 580-81 (Tex. Crim. App. 2008); *Keeter v. State*, 175 S.W.3d 756, 760-61 (Tex. Crim. App. 2005); *Hall*, 283 S.W.3d at 154. This is because "a *Brady* claim requires that the defendant show by a preponderance of the evidence that evidence was withheld, that it was favorable to the defense, and that the evidence was material." *Keeter*, 175 S.W.3d at 760. Such a showing can be made with evidence presented at a hearing on a motion for new trial. *See Hall*, 283 S.W.3d at 175-79 (reversing appellant's sentence and remanding for new trial on punishment based on evidence presented at hearing on motion for new trial). In this case, however, Nash failed to raise a *Brady* claim in the court below, either in his written motion for new trial or at the subsequent hearing on that motion. Accordingly, Nash has failed to preserve error on this issue. *See Keeter*, 175 S.W.3d at 759-60; *Jones v. State*, 234 S.W.3d 151, 158 (Tex. App.—San Antonio 2007, no pet.). *Cf. Clarke*, 270 S.W.3d at 580 (holding that failure to raise *Brady* claim in written motion for new trial is excused under certain circumstances, so long as *Brady* claim is subsequently addressed at hearing on motion for new trial; "all that is required" is that "argument was presented to the trial judge in time for him to rule on it").

However, Nash claims that because McDaniel was not released from custody until after the motion for new trial was denied, "the first opportunity to present any court with this information is in the present brief." Assuming without deciding that this is true,[1] we are aware of

---

[1] Considering that McDaniel's parole status was an issue that Nash attempted to raise during trial, we are skeptical of this claim.

no authority that would allow us to waive the error-preservation requirement under these circumstances. But even if we were to conclude that error preservation was not required here, we could not conclude on this record that the State failed to comply with *Brady*. Other than McDaniel's testimony during Nash's offer of proof at trial, in which McDaniel testified that his parole was being revoked, there is nothing in the record relating to McDaniel's current or past parole status or to the State's alleged possession or withholding of evidence related to McDaniel's parole status. Consequently, we cannot determine on this record whether the State failed to disclose evidence in its possession, whether the withheld evidence is favorable to the defendant, or whether the evidence is "material" to either guilt or punishment.[2]

Apparently anticipating that we might find this record inadequate to support his claims, Nash requests, as an alternative to reversal, that we "abate the appeal and remand the case to the trial court so that Appellant can properly litigate his motion for new trial and further develop the foundation for his Constitutional claim." In effect, Nash wants us to suspend the appellate rules relating to motions for new trial in criminal cases, *see* Tex. R. App. P. 21, and allow him to file a new or amended motion for new trial in the district court that addresses his *Brady* claim. *See* Tex. R. App. P. 2 (allowing appellate courts to suspend appellate rules in certain circumstances). However, the court of criminal appeals has instructed intermediate appellate courts not to use Rule 2 in such a manner, "absent truly extraordinary circumstances." *See Oldham v. State*, 977 S.W.2d 354,

---

[2] Although not dispositive, we note that the State represents in its brief that it "had no knowledge whatsoever that McDaniel was placed back on parole after Appellant's trial. In fact, the first knowledge the State had of that fact was reading about it in Appellant's brief."

360 (Tex. Crim. App. 1998). We do not find such circumstances present here.[3] We overrule Nash's second point of error.

## CONCLUSION

We affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Justices Puryear, Pemberton and Rose

Affirmed

Filed: August 21, 2013

Do Not Publish

---

[3] We note that Nash is not without a remedy. He may file a post-conviction writ of habeas corpus alleging a *Brady* violation. *See* Tex. Code Crim. Proc. art. 11.07.