Florence Jean FISHER, Appellant,

v.

**The STATE of Texas, Appellee.**

**No. 06–06–00131–CR.**

Court of Appeals of Texas,
Texarkana.

Submitted Feb. 1, 2007.

Decided April 11, 2007.

Toby C. Wilkinson, Law Office of Toby Wilkinson, Greenville, for appellant.

Keli M. Aiken, Asst. Dist. Atty., F. Duncan Thomas, Hunt County Dist. Atty., Greenville, for appellee.

Before MORRISS, C.J., CARTER and MOSELEY, JJ.

## OPINION

Opinion by Chief Justice MORRISS.

The brutal reality of the death of four-year-old Jordan Mach, and of his victimization while living at his final place of residence, was vividly portrayed by the evidence. Autopsy and photographic evidence demonstrated that Jordan died from blunt force injury; that he had been severely beaten on his head, face, chest, shoulders, back, arms, legs, and buttocks; and that many fresh wounds and numerous scars were scattered over much of his small body.

After Jordan's natural mother had died, Jordan and three siblings had come to live in a nice-looking, two-story brick house in Hunt County with their father, Anthony Fisher; Fisher's wife, Florence Jean Fisher; and Florence's four grandchildren.[1]

---

1. The record indicates that four children, Anthony Ray, Anthonisha, Jordan, and Jazmine, were Anthony Fisher's biological children, and that the other four children in the household were Florence's biological grandchildren.

In a jury trial, Florence was convicted for injury to Jordan in causing bodily injury by omission. She was sentenced to ten years' imprisonment.[2]

On appeal, Florence contends that the evidence is legally and factually insufficient to support her conviction for injury to Jordan in causing bodily injury by omission and that the trial court erred by allowing the State to exhibit photographs of the children during its opening statement. We affirm the trial court's judgment because we hold (1) legally and factually sufficient evidence supports the judgment, and (2) even if error, no harm appears from the trial court's approval of the State's displaying photographs during its opening statement.

*(1) Legally and Factually Sufficient Evidence Supports the Judgment*

■ In reviewing the legal sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex.Crim.App.2000).

■ In a factual sufficiency review, we view all the evidence in a neutral light and determine whether the evidence supporting the verdict is so weak that the jury's verdict is clearly wrong or manifestly unjust or against the great weight and preponderance of the evidence. *Marshall v. State*, 210 S.W.3d 618, 625 (Tex.Crim. App.2006); *Watson v. State*, 204 S.W.3d 404, 414–15 (Tex.Crim.App.2006); *Clewis v. State*, 922 S.W.2d 126, 134 (Tex.Crim. App.1996). In a factual sufficiency review, we are to afford "due deference" to a

jury's determinations. *Marshall*, 210 S.W.3d at 625.

The Texas Penal Code provides that

(a) A person commits an offense if he intentionally, knowingly, recklessly, or with criminal negligence, by act or *intentionally, knowingly, or recklessly by omission*, causes to a child . . . :

   (1) serious bodily injury. . . .

   . . . .

(b) An omission that causes a condition described by Subsection (a)(1) . . . is conduct constituting an offense under this section if:

   (1) the actor has a legal or statutory duty to act; or

   (2) the actor has assumed care, custody, or control of a child, elderly individual, or disabled individual.

TEX. PENAL CODE ANN. § 22.04(a), (b) (Vernon Supp.2006) (emphasis added). There is no question that Florence had assumed the care, custody, and control of Jordan and had the duty to act. There is also no question that death is included in the definition of "serious bodily injury." TEX. PENAL CODE ANN. § 1.07(a)(46) (Vernon Supp. 2006).

■ Paramedic Becky Drake testified that Jordan was cold and nonresponsive when she first saw him. Drake responded to a call at the residence and described Jordan as having bruises, lacerations, avulsions (tears), and cuts all over his body. The photographs of his body introduced at trial support her descriptions in each respect. She also testified that Jordan's penis was falling off. Although attempts were made to resuscitate Jordan, he did not respond. Scott Pierce, the emergency room doctor who admitted Jordan, testified similarly about his physical condition,

---

2. Florence was also prosecuted in another case, that one involving the abuse of young Anthony. She was convicted in that case as

well, and her appeal from that conviction is before this Court in *Fisher v. State*, cause number 06–06–00132–CR, 2007 WL 1063005.

as did a police officer and a Child Protective Services investigator.

Young Anthony testified that Florence and Anthony, Sr., beat young Anthony and Jordan, made them bend over and touch their toes, and hit them hard with a belt. He testified that sometimes Florence would sit on the couch while his father beat Jordan and that sometimes she would sit on them while the father hit them. He also testified to a number of other punishments—which could appropriately be called torture—inflicted on Jordan, including being placed in a tub full of ice water and having a rubber band wound tightly around his penis so he would not wet the bed.

Linda Duggan, a counselor who worked for the State, testified that young Anthony had told her, during their counseling sessions, about the above-referenced actions of Florence and the senior Anthony. Duggan also recounted young Anthony's statement to her that Florence threatened to have his father whip him if he did not do as he was told—whippings described as beatings with straps and belts, while being held down. Duggan also testified that young Anthony had told her that Florence had individually beaten him, locked him in a closet numerous times, and made him stand in a bent-over position for hours— even all night long—at the side of her bed. According to Duggan's testimony, young Anthony began telling about the injuries inflicted by Florence in 2005, only after he finally became sure that he was going to be adopted by his grandparents.

Jazmine Mach testified that Florence did nothing when her father hit Jordan, and that Florence hit Jordan more than once with a shoe and a belt. She described Jordan as having purple arms and legs, lots of sores, and swollen eyes.

The jury was charged that it could find Florence guilty either for her individual acts or omissions or as a person criminally responsible for the conduct of her husband. The evidence as set out above shows that she did not attempt to stop her husband from severely beating Jordan, that she threatened Jordan with beatings, and that she beat him herself. The documentary evidence supports that testimony. The evidence is both legally and factually sufficient to support the verdict.

*(2) Even if Error, No Harm Appears from the Trial Court's Approval of the State's Displaying Photographs During Its Opening Statement*

■ Florence next contends that the trial court erred by allowing the State to show five photographs of the children to the jury during its opening statement at trial. The record reflects that the State, through a sponsoring witness,[3] provided a "predicate" for two of the photographs before trial began. State's Exhibits 270–72 are photographs of, respectively, young Anthony, Anthonisha, and Jazmine taken the day they were removed from the house. Exhibit 70 is a photograph of Jordan taken before he moved into the Fisher house, and Exhibit 327 is a photograph taken of Jordan's body in the hospital emergency room.

Florence's counsel objected to the procedure on numerous grounds: (1) it was during an opening statement, (2) it amounted to putting on proof during opening, (3) the photographs were unfairly prejudicial, and (4) nobody knew whether the photographs would ultimately be admitted into evidence.[4] Thereafter, however-

---

3. Trial had not yet begun, and evidence was not yet being presented to the jury. By definition, a witness is one who gives evidence in a cause before a court.

4. We also note that the State's representation

er, based on representations by State's counsel that the predicate could and would be established during presentation of evidence, the trial court proceeded and summarized its understanding:

I understand [Florence's counsel] is willing to go forward with opening with the understanding that you will be able to provide a predicate for them later. The objections, other than predicate, are overruled. Objections as to predicate are—the ruling is withheld from—by agreement. They will be allowed to be used in opening statement.

■ On appeal, Florence focuses her argument on an alleged improper application of Article 36.01(a)(3) of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 36.01(a)(3) (Vernon 2007). That article sets out the order of proceeding in trial of criminal cases. In connection with opening statements, it provides that "[t]he State's attorney shall state to the jury the nature of the accusation and the facts which are expected to be proved by the State in support thereof." *Id.* The purpose of Article 36.01 is to communicate to the jury the party's theory of the case in order to help the jury evaluate the evidence as it is being presented. *Parra v. State,* 935 S.W.2d 862, 871 (Tex. App.-Texarkana 1996, pet. ref'd); *see Love v. State,* 69 S.W.3d 678, 680 (Tex.App.-Texarkana 2002, pet. ref'd). The State's opening statement in a criminal case is an outline of facts which the prosecution in good faith expects to prove. *Ketchum v. State,* 199 S.W.3d 581, 597 (Tex.App.-Corpus Christi 2006, pet. ref'd); *Parra,* 935 S.W.2d at 871.

The unanswered question is whether such an outline is limited to words alone, or whether a party may use visual aids to assist in that presentation. Florence's counsel suggests that this is a case of first impression and that policy forbids displaying of such items to the jury during opening statement. Counsel argues that, if not restricted here, the State will move from photographs of victims and others to bloody clothes, live victims with massive scars, or to any other item that may eventually be presented as evidence.

Counsel appears to be correct in stating that this issue has not heretofore been addressed in a criminal context. Neither the parties nor our own research have found any criminal opinions on point. The analogous civil rule—which is almost identical to the criminal rule—has been analyzed[5] in several cases, and the general consensus has been that the trial court has discretion to allow the use of such materials. Cases suggest that, if the items used are ultimately admitted at trial, any error in allowing their use during opening statements is harmless.

In the civil context, the Fourteenth Court of Appeals has held that the rule does not afford counsel the right to detail to the jury the evidence which he intends to offer, nor to read or display the documents and photographs he proposes to offer. Where counsel is allowed to detail expectations in the opening statement, he places matters before the jury without the determination of their admissibility. *See Ranger Ins. Co. v. Rogers,* 530 S.W.2d 162, 170 (Tex.Civ. App.-Austin 1975, writ ref'd n.r.e). This practice misleads and confuses the ju-

---

that "pictures are offered in opening in every case across the state" is a considerable overstatement.

5. "(a) The party upon whom rests the burden of proof on the whole case shall state to the jury briefly the nature of his claim or defense and what said party expects to prove and the relief sought." TEX.R. CIV. P. 265(a).

rors as between counsel's mere expectations and evidence that is actually admitted.

*Guerrero v. Smith,* 864 S.W.2d 797, 799 (Tex.App.-Houston [14th Dist.] 1993, no writ). The court pointedly stated that, "although this conduct should not have been tolerated by the trial court, we are bound by the abuse of discretion standard which gives trial courts wide latitude in limiting opening statements." *Id.* at 800. The court concluded that no harm was shown because the photograph was indeed later admitted into evidence.

The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action; rather, it is a question of whether the trial court acted without reference to any guiding rules or principles, and the mere fact that a trial court may decide a matter within its discretionary authority differently than an appellate court does not demonstrate such an abuse. *Howell v. State,* 175 S.W.3d 786, 792 (Tex.Crim.App.2005).

The use of photographs is not included within the strict language of the article. Allowing the use of photographs, which are later properly admitted and shown to the jury, may not necessarily be outside the range of the trial court's discretion. We need not decide today whether any and all evidence may be pre-presented to the jury during opening statements, but we suggest that the use of any such visual aids should be carefully controlled by the trial court. We do not find that the trial court's ruling here was an abuse of discretion, even if we would have decided differently were we in the position of the trial judge.

We do hold today that Florence was not harmed by the use of the photographs in opening statement—even if it was error to allow it—since the photographs were ultimately admitted into evidence. *Cf. Chamberlain v. State,* 998 S.W.2d 230, 235 (Tex. Crim.App.1999); *McFarland v. State,* 845 S.W.2d 824, 840 (Tex.Crim.App.1992); *Siqueiros v. State,* 685 S.W.2d 68, 71 (Tex. Crim.App.1985) (subsequently admitted evidence can render evidentiary error harmless). We note, also, that Florence has not provided this Court with an explanation of how she believes she was harmed by the State's use of the photographs during opening statement. *See* TEX.R.APP. P. 38.1(h).

The contention of error is overruled.

We affirm the judgment.