ACCEPTED
01-14-00796-cr
FIRST COURT OF APPEALS
HOUSTON, TEXAS
12/28/2015 3:08:58 PM
CHRISTOPHER PRINE
CLERK

## Nos. 01-14-00796-CR & 01-14-00797-CR

In the
Court of Appeals
For the
First District of Texas
At Houston

————————◆————————

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

12/28/2015 3:08:58 PM

CHRISTOPHER A. PRINE
Clerk

## Nos. 1379141 & 1413756

In the 338th District Court
Of Harris County, Texas

————————◆————————

**GARRY FULLER**
*Appellant*
V.
**THE STATE OF TEXAS**
*Appellee*

————————◆————————

STATE'S APPELLATE BRIEF

————————◆————————

**DEVON ANDERSON**
District Attorney
Harris County, Texas

**DAN MCCRORY**
Assistant District Attorney
Harris County, Texas
mccrory_daniel@dao.hctx.net

**SHANNON DREHNER**
**JOHN JORDAN**
Assistant District Attorneys
Harris County, Texas

1201 Franklin, Suite 600
Houston, Texas 77002
Tel.: 713/274-5826
FAX No.: 713/755-5809

*Counsel for Appellee*

ORAL ARGUMENT WAIVED

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to TEX. R. APP. P. 39.7, the State waives oral argument since, as detailed in the State's brief, all the issues raised on appeal may be resolved by the application of well-settled law.

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT ................................................................i

INDEX OF AUTHORITIES ........................................................................ iii

STATEMENT OF THE CASE ....................................................................1

STATEMENT OF FACTS ........................................................................1

SUMMARY OF THE ARGUMENTS ............................................................4

REPLY TO POINT OF ERROR ONE ..........................................................8

REPLY TO POINT OF ERROR TWO ........................................................12

REPLY TO POINT OF ERROR THREE ....................................................21

REPLY TO POINT OF ERROR FOUR ......................................................24

REPLY TO POINT OF ERROR FIVE ........................................................25

REPLY TO POINT OF ERROR SIX ..........................................................30

REPLY TO POINT OF ERROR SEVEN ....................................................31

REPLY TO POINT OF ERROR EIGHT ....................................................37

REPLY TO POINTS OF ERROR NINE AND TEN ..................................38

CONCLUSION ........................................................................................39

CERTIFICATE OF SERVICE ................................................................40

CERTIFICATE OF COMPLIANCE ........................................................40

# INDEX OF AUTHORITIES

**CASES**

*Archie v. State*,
221 S.W.3d 695 (Tex. Crim. App. 2007)............................................................17

*Blackwell v. State*,
193 S.W.3d 1 (Tex. App.--Houston [1st Dist.] 2006, pet. ref'd).......................8, 9

*Brown v. State*,
212 S.W.3d 851 (Tex. App.--Houston [1st Dist.] 2006, pet. ref'd).....................16

*Cadoree v. State*,
331 S.W.3d 514 (Tex. App.--Houston [14th Dist.] 2011, pet. ref'd) ...................38

*Cohn v. State*,
849 S.W.2d 817 (Tex. Crim. App. 1993).............................................................30

*Fisher v. State*,
220 S.W.3d 599 (Tex. App.--Texarkana 2007, no pet.)........................................13

*Foster v. State*,
101 S.W.3d 490 (Tex. App.--Houston [1st Dist.] 2002, no pet.).........................19

*Gamboa v. State*,
296 S.W.3d 574 (Tex. Crim. App. 2009)................................................. 14, 20, 35

*Gardner v. State*,
730 S.W.2d 675 (Tex. Crim. App. 1987)................................................. 14, 21, 35

*Giesen v. State*,
688 S.W.2d 176 (Tex. App.--Dallas 1985, no pet.).............................................14

*Gonzales v. State*,
190 S.W.3d 125 (Tex. App.--Houston [1st Dist.] 2005, pet. ref'd).....................23

*Guidry v. State*,
9 S.W.3d 133 (Tex. Crim. App. 1999)................................................................25

*Jessop v. State*,
368 S.W.3d 653 (Tex. App.--Austin 2012, no pet.).................................................31

*Johnston v. State*,
230 S.W.3d 450 (Tex. App.--Fort Worth 2007, no pet.)......................................13

*Lair v. State*,
265 S.W.3d 580 (Tex. App.--Houston [1st Dist.] 2008, pet. ref'd)......................20

*Lape v. State*,
893 S.W.2d 949 (Tex. App.--Houston [14th Dist.] 1994, pet. ref'd) ...................21

*McDonald v. State*,
186 S.W.3d 86 (Tex. App.--Houston [1st Dist.] 2005, no pet.) ...........................10

*Motilla v. State*,
78 S.W.3d 352 (Tex. Crim. App. 2002)................................................................18

*Napier v. State*,
887 S.W.2d 265 (Tex. App.--Beaumont 1994, no pet.)........................................30

*Nash v. State*,
175 S.W.3d 427 (Tex. App.--Texarkana 2005, pet. ref'd)...................................38

*Paster v. State*,
701 S.W.2d 843 (Tex. Crim. App. 1985)..............................................................15

*Rios v. State*,
263 S.W.3d 1 (Tex. App.--Houston [1st Dist.] 2005, pet. dism'd, untimely filed)
.............................................................................................................................23

*Sanchez v. State*,
165 S.W.3d 707 (Tex. Crim. App. 2005)................................................................9

*Standefer v. State*,
59 S.W.3d 177 (Tex. Crim. App. 2001)...................................................9, 10, 11

*Stewart v. State*,
686 S.W.2d 118 (Tex. Crim. App. 1984)...................................................... 26, 27

*Tillman v. State*,
376 S.W.3d 188 (Tex. App.--Houston [14th Dist.] 2012, no pet.) ............... 18, 23

*Tollett v. State*,
    422 S.W.3d 886 (Tex. App.--Houston [14th Dist.] 2014, pet. ref'd) ....................25

*Tristan v. State*,
    393 S.W.3d 806 (Tex. App.--Houston [1st Dist.] 2012, no pet.).........................26

*Valle v. State*,
    109 S.W.3d 500 (Tex. Crim. App. 2003).............................................................23

*Ward v. State*,
    522 S.W.2d 228 (Tex. Crim. App. 1975).............................................................16

*Williams v. State*,
    895 S.W.2d 363 (Tex. Crim. App. 1994).............................................................31

*Wilson v. State*,
    71 S.W.3d 346 (Tex. Crim. App. 2002)........................................................ 27, 35

*Yatalese v. State*,
    991 S.W.2d 509 (Tex. App.--Houston [1st Dist.] 1999, pet. ref'd).....................23

## STATUTES

TEX. CODE CRIM. PROC. ANN. art. 36.01 (West 2007) ................................................ 13, 17

TEX. CODE CRIM. PROC. ANN. art. 37.03 (West Supp. 2014) ........................................... 38

## RULES

Tex. R. App. P.  33.1 ....................................................................................... 22

TEX. R. APP. P. 39.7.............................................................................................i

TEX. R. EVID. 412 .................................................................................28, 29

v

**TO THE HONORABLE COURT OF APPEALS:**

## STATEMENT OF THE CASE

In separate indictments, appellant was charged with two offenses of sexual assault of a child, enhanced by two prior felony convictions. (CR I 19, 41; CR II 5).[1]  After finding appellant guilty of both charged offenses, the jury assessed punishment at life confinement for both offenses. (CR I 166; CR II 56).

## STATEMENT OF FACTS

The complainant, Amy[2], grew up in California with her mother and two siblings. (RR III 119-120).  Her stepfather, appellant, entered her life when she was three years old and he moved in with her and her family the following year. (RR III 119).

Several years later, when Amy was about seven years old, appellant began molesting her.  He touched her vagina and chest every other day. (RR III 121).  At some point, while Amy was still in elementary school, appellant began taking her to motel rooms where he would show her pornographic videos. (RR III 121-122).  During these sessions, appellant touched Amy's vagina and breasts and he

---

[1]   "CR I" refers to the clerk's record for cause number 1379141.
     "CR II" refers to the clerk's record for cause number 1413756.
[2]   Given the nature of the offense, the State will refer to the complainant by a fictitious name.

attempted to have sexual intercourse with her. (RR III 122). Appellant told Amy that he was teaching her how to have sex. (RR III 122).

When Amy was in middle school, appellant began having sexual intercourse with her. (RR III 122-123). Specifically, he placed his penis in her vagina. (RR III 124). He also performed oral sex on Amy and caused her to reciprocate. (RR III 124).

Amy was frightened by this sexual abuse and she obviously did not want it to continue. (RR III 125). So, while in the eighth grade, she told a school friend and her school counselors about it. (RR III 125-130). As a result of Amy's outcry, CPS was notified and Amy was taken to the police station where she was interviewed. (RR III 130). Amy was unable to tell the police about appellant's molestation of her because she was afraid of what might happen. (RR III 130).

Nevertheless, Amy was removed from her home and placed in foster care for 18 months. (RR III 131). During the CPS investigation, Amy was "asked a lot of questions…[b]y a lot of people." (RR 155). Amy gave inconsistent accounts of what had happened and her own family did not believe her. (RR III 156). The police and CPS workers determined Amy's allegations against appellant were unfounded and closed the case. (RR III 158). After the authorities ruled that there was no concrete evidence to support the allegations, Amy was placed back in her home with appellant and her other family members during her ninth grade year.

(RR III 131-132, 157). Amy's return to her home upset her because she feared appellant would resume his pattern of sexually assaulting her. (RR III 131).

During the summer following Amy's ninth grade year, appellant became angry during a telephone conversation and announced that the family would move out of state. (RR III 132). They moved to an apartment in Houston, where Amy had her own bedroom. (RR III 133). Following the move, appellant continued to sexually abuse Amy. (RR III 134).

On one particular occasion, appellant entered Amy's bedroom, touched her, and then left. (RR III 139). Amy suspected that appellant might return and that "something more was going to happen." (RR III 139). Accordingly, she activated the video camera on her laptop computer which was on her bed. (RR III 140-141). In the event something occurred, she wanted it to be on tape "so someone would believe" her. (RR III 143).

As feared, appellant did return to Amy's bedroom. (RR III 139). Appellant approached the bed where Amy was seated and removed her pants. (RR III 141). He then knelt down and performed oral sex on her. (RR III 141). He also placed his penis in her vagina. (RR III 142).

Just as she had done in California, Amy made an outcry to a school friend and to her school counselor about a month after this sexual assault. (RR III 143-144). Unlike the California incident, Amy was now armed with videotape proof of

3

the offense and she shared the video with school authorities who reported the abuse to the police and CPS. (RR III 25, 144). The video of the sexual assault was turned over to the police and it was played before the jury during appellant's trial. (RR III 59, 88-92, 179).

The investigation of this offense was assigned to Deputy James Cassidy. (RR III 86-87). Deputy Cassidy went to appellant's residence and asked to take a statement from him. (RR III 98). Appellant, who was aware of the videotape, told the officer that he was "ready to go to jail." (RR III 98). After the officer advised appellant that "it's a noncustodial statement," appellant was cooperative and provided an audio-recorded statement that was later played for the jury. (RR III 98-101; SX 3).

In his recorded statement, appellant suggested that Amy teased and seduced him by dressing provocatively and that she set him up by recording the encounter. (RR III 112-113; SX 3). He admitted, however, that it was his fault and that he had made a mistake. (RR III 113; SX 3). He acknowledged that he had "fucked up" and asked to be taken to jail, even after Deputy Cassidy assured him that he was not under arrest and was free to leave. (RR III 112; SX 3).

## SUMMARY OF THE ARGUMENTS

Point one:    The prosecutor's voir dire question was not a commitment question, much less an improper one.  A commitment question is one that commits a

4

prospective juror to resolve, or refrain from resolving, an issue a certain way after learning a particular fact. An *improper* commitment question attempts to create a bias or prejudice in the venireperson before he has heard the evidence, whereas a proper voir dire question attempts to discover a venireperson's preexisting bias or prejudice.

The prosecutor's question did not ask the veniremembers to resolve, or refrain from resolving, an issue a certain way after being informed of a *particular* set of facts. Rather, the question simply asked the prospective jurors whether they thought it likely or unlikely that children generally will fabricate allegations of sexual abuse. The question attempted to discover whether any of the prospective jurors harbored a pre-existing bias or prejudice concerning the likelihood of children in general fabricating sexual abuse allegations. The question did not ask the prospective jurors to commit to any particular set of facts – let alone the facts of this case – and thus it was not an improper attempt to bind the jurors.

Point two:   The prosecutor's opening statement was a proper description of the nature of the evidence she anticipated presenting in order to support the allegations made against appellant.  Furthermore, any error in her first complained-of statement was cured by the trial judge instructing the jury to disregard it.  And any error in the second complained-of comment was waived in the absence of a timely trial objection. Any error also was waived because appellant received all the relief

5

he requested.  His objection was sustained and he sought no further relief (such as an instruction to disregard).  Finally, any error in the prosecutor's opening statement was harmless due to the overwhelming weight of the evidence of appellant's guilt – the jury viewed a videotape of appellant actually committing the offense and heard an audiotape in which appellant admitted his wrongdoing.

Point three:  Appellant waived any error regarding the prosecutor's questions about Amy's demeanor because his brief fails to identify any particular question of which he complains and it fails to provide this Court with any record citations identifying where in the appellate record the alleged error occurred.  Alternatively, appellant waived any error relating to the prosecutor's questions about Amy's demeanor because the prosecutor posed eight such questions and appellant objected a single time.  Furthermore, the questions were proper because the demeanor of a child-victim of sexual assault may be relevant because a change in behavior is consistent with the victim having experienced a traumatic event which, in turn, tends to prove the offense occurred.  Finally, any error in the admission of evidence relating to Amy's demeanor was harmless due to the overwhelming weight of the evidence.

Point four:  Contrary to appellant's claim, the trial judge did not prevent the jury from hearing that the California authorities deemed Amy's previous outcry allegations against appellant unfounded.  Three different witnesses provided the jury with this information, with one witness actually reading from the CPS records

from California and confirming that the investigation concluded that Amy's outcry was "unfounded and closed."

Point five:   Appellant waived any error in the exclusion of evidence about Amy's purported past sexual activity because the appellate record does not show what the excluded evidence would have been.  He also waived any error relating to this issue because his trial objection fails to comport with his appellate argument.  Moreover, appellant's reliance on the "rebut or explain medical evidence" exception to the general rule excluding evidence of a victim's sexual history is misplaced because the State did not present any medical evidence of past sexual activity.  Finally, any error was harmless due to the overwhelming weight of appellant's guilt.

Point six:   The trial judge did not err in admitting evidence identifying possible symptoms that may manifest in a sexual-assault child victim because the jury is entitled to know the probable long-term psychological effects that the victim might suffer for which the defendant is blameworthy.  Furthermore, Amy actually demonstrated many of the described symptoms thereby linking the complained-of testimony to the facts of this case.

Point seven: Any error in a witness's reference to "pedophilia" was cured by the judge instructing the jury to disregard it the single time that particular term was used.  Furthermore, appellant waived any complaint about the use of this term

because his trial objection fails to comport with his appellate argument. Finally, any comment about pedophilia was proper because appellant's conduct places him within the definition of that word.

Point eight: The trial judge properly sustained the prosecutor's objection to appellant's closing argument about the parole laws because the argument was an improper reference to the application of the parole laws to him in particular.

Points nine and ten: Since there were no individual errors, there was no "cumulative effect" of any errors to complain about.

## REPLY TO POINT OF ERROR ONE

In his first point of error, appellant contends the trial judge erred during the voir dire proceeding by allowing the prosecutor to pose a commitment question to the venire members. Specifically, appellant claims the prosecutor improperly committed the venire members when she asked them the following question: "How likely do you think a child would be to lie about being sexually abused?" (RR II 69).

A voir dire question is proper if its seeks to discover a juror's view on an issue applicable to the case. *Blackwell v. State*, 193 S.W.3d 1, 19 (Tex. App.--Houston [1st Dist.] 2006, pet. ref'd). Voir dire examination permits the parties to assess the desirability of prospective jurors and to select a competent, fair, impartial, and unprejudiced jury. *Id*. Since a trial judge has broad discretion over

8

the voir dire process, an appellate court should not disturb a trial judge's ruling on the propriety of a particular question during voir dire absent an abuse of discretion. *Id.*

An attorney may not, however, attempt to bind or commit a venire member to a verdict based on a hypothetical set of facts. *Id.* Commitment questions are those that commit a prospective juror to resolve, or refrain from resolving, an issue a certain way after learning a particular fact. *Id.* (quoting *Standefer v. State*, 59 S.W.3d 177, 179 (Tex. Crim. App. 2001)). While these type of questions generally elicit a "yes" or "no" answer, an open-ended question can be a commitment question if the question asks the prospective juror to set the hypothetical parameters for his decision-making. *Id.* Commitment questions that attempt to bind prospective jurors to a position, using a hypothetical or otherwise, are improper and serve no purpose other than to commit the jury to a specific set of facts before the presentation of any evidence at trial. *Blackwell*, 193 S.W.3d at 19 (quoting *Lydia v. State*, 109 S.W.3d 495, 497 (Tex. Crim. App. 2003)).

But not all commitment questions are improper. *Standefer*, 59 S.W.3d at 179-83. An improper commitment question attempts to create a bias or prejudice in the venireperson before he has heard the evidence, whereas a proper voir dire question attempts to discover a venireperson's preexisting bias or prejudice. *Sanchez v. State*, 165 S.W.3d 707, 712 (Tex. Crim. App. 2005).

There is a three-pronged test for determining whether a voir dire question calls for an improper commitment. *Standefer*, 59 S.W.3d at 179-83. The first prong asks whether a particular question is a commitment question. *Id*. at 179-81. If it is a commitment question, the second prong considers whether the question leads to a valid challenge for cause. *Id*. at 181-82. If the question meets the "challenge for cause" requirement, the third prong examines whether the question includes only those facts necessary to test whether a prospective juror is challengeable for cause. *Id*. at 182-83.

As mentioned, appellant claims the prosecutor posed an improper question when she asked, "How likely do you think a child would be to lie about being sexually abused?" (RR II 69). This Court addressed a very similar issue in *McDonald v. State*, wherein the prosecutor asked the venire members, "Do you feel that children likely will make up sexual abuse or unlikely?" *McDonald v. State*, 186 S.W.3d 86, 89 (Tex. App.--Houston [1st Dist.] 2005, no pet.).

This Court determined that this was not an improper commitment question because it was not even a commitment question, per the first prong of *Standefer*'s three-pronged test. *Id*. at 90. This Court explained that the question does not ask the veniremembers to resolve, or refrain from resolving, an issue a certain way "after being informed of a *particular* set of facts." *Id*. (original italics). Rather, the question simply asks the prospective jurors whether they think it likely or unlikely

10

that children generally will fabricate allegations of sexual abuse. *Id.* "[T]he State's question attempts to discover whether any of the prospective jurors harbor a pre-existing bias or prejudice concerning the likelihood of children in general fabricating sexual abuse allegations. The question does not ask the prospective jurors to commit to any particular set of facts – let alone the facts of this case – and thus it is not an improper attempt to bind the jurors under *Standefer*." *Id.*

Like the question in *McDonald*, the question at issue in this case is not a commitment question. It does not ask the venire members to resolve, or refrain from resolving, an issue a certain way after being informed of a particular set of facts. It does not ask the veniremembers to commit to any particular set of facts. It simply asks how likely, if at all, they think children generally will lie about sexual abuse. Therefore, the question is not a commitment question, much less an improper commitment question. *Id.* 89-90; *Standefer*, 59 S.W.3d at 183 n.28 ("a question in a child-molestation case which inquires whether the juror believes that no child could/would lie about such a thing" is proper).

Since the question is not an improper commitment question, the trial judge did not abuse his discretion in overruling appellant's objection to it. Point of error one is meritless and should be overruled.

**REPLY TO POINT OF ERROR TWO**

In his second point of error, appellant contends the trial judge erred by allowing the prosecutor to deliver an improper opening statement. Appellant maintains the prosecutor's statements were outside the record and were calculated to inflame the jury's passion.

Relevant facts

During her opening argument, the prosecutor referred to the video of appellant's commission of the offense as "one of the most critical pieces of evidence that you're going to see in this case." (RR III 11). Given the graphic nature of the video, the prosecutor then added, "And I'm very sorry that you're going to have to see that video." (RR III 11).

The trial judge sustained appellant's "personal opinion" objection to this comment and then granted appellant's request for an instruction to disregard. (RR III 11). After instructing the jury to disregard the prosecutor's statement, the judge denied appellant's motion for a mistrial. (RR III 11-12).

The prosecutor then argued, "The evidence will show that the video is offensive and degrading. But what it shows about the defendant is that he doesn't care about [Amy.] He doesn't care how she feels." (RR III 12). Appellant objected "this is argument. This is not what the evidence is going to show" (RR III 12). The judge sustained the objection and instructed the prosecutor to restrict her

opening statement to the content of the anticipated testimony and other evidence. (RR III 12). After his objection was sustained, appellant sought no further relief. (RR III 12).

Argument and analysis

The purpose of an opening statement is to allow the prosecutor to state to the jury the nature of the accusation and the facts that are expected to be proved by the prosecutor in support thereof. TEX. CODE CRIM. PROC. ANN. art. 36.01(a)(3) (West 2007). An opening statement communicates to the jury the party's theory of the case in order to help the jury evaluate the evidence as it is being presented. *Fisher v. State*, 220 S.W.3d 599, 603 (Tex. App.--Texarkana 2007, no pet.).

Regarding the first of the two comments of which appellant complains ("I'm very sorry that you're going to have to see that video"), a prosecutor may comment on the circumstances of the anticipated evidence beyond its content. For example, in *Johnston v. State*, the prosecutor's opening statement was proper despite the prosecutor stating that she hoped the fragile child-victim witness would find the courage to testify because the prosecutor wanted the jury to hear her testimony. *Johnston v. State*, 230 S.W.3d 450, 457 (Tex. App.--Fort Worth 2007, no pet.). In this case, the prosecutor's comment simply warned the jurors of the graphic nature of the video and her obvious regret in having to expose them to such a disturbing

13

image. (RR III 11). Such statements relating to the nature of the anticipated evidence were proper.

Moreover, even assuming the prosecutor's statement was improper, any error was cured by the trial judge's prompt instruction to the jury to disregard the comment. (RR III 11). Jury instructions to disregard are generally considered sufficient to cure improprieties that occur during trial. *Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009). A reviewing court assumes that a jury will follow the judge's instructions. *Id*. It puts its faith in the jury's ability, upon instruction, consciously to recognize the potential for prejudice, and then consciously to discount the prejudice, if any, in its deliberations. *Gardner v. State*, 730 S.W.2d 675, 696 (Tex. Crim. App. 1987).

In particular, an instruction to disregard will cure an error resulting from a prosecutor apologizing to the jury for the graphic nature of the evidence necessary to prove an offense. In a burglary case involving a sexual assault, for example, the prosecutor argued, "I want to apologize for [sic] you too, because of the nature of this offense and the trial and the kind of testimony that you have had to hear sitting out there." *Giesen v. State*, 688 S.W.2d 176, 179 (Tex. App.--Dallas 1985, no pet.). A second prosecutor argued, "I join in the apologies of my co-counsel because you had to sit there and listen to a bunch of perverted facts…" *Id*.

The trial court granted the defendant's objection to the first prosecutor's argument, instructed the jury to disregard, but denied the defendant's motion for mistrial. *Id.* On appeal, the reviewing court determined the instruction to disregard was sufficient to cure any error in the prosecutor's "apology" comment.[3] *Id.*

Like the prosecutor in *Giesen*, the prosecutor in this case simply apologized to the jurors for the necessity of exposing them to the graphic nature of the evidence. (RR III 11). And like the result in *Giesen*, any error in the prosecutor's first comment in this case was cured by the trial judge's instruction to disregard. An instruction to disregard has been found to cure error in the admission of statements much more prejudicial than the statement at issue in this case. *Paster v. State*, 701 S.W.2d 843, 848 (Tex. Crim. App. 1985) (instruction rendered testimony about defendant's alleged involvement in two extraneous murders harmless). Accordingly, the trial judge, after issuing an instruction to disregard, did not err in denying appellant's motion for mistrial with regard to the prosecutor's first statement.

Regarding the prosecutor's second complained-of comment ("The evidence will show that the video is offensive and degrading."), any error was waived because appellant failed to timely object and he also failed to pursue his objection

---

[3] The defendant's objection to the second argument was overruled, but was found harmless

15

to an adverse ruling. Regarding this portion of the prosecutor's argument, the record reflects that her full statement reads, "The evidence will show that the video is offensive and degrading. But what it shows about the defendant is that he doesn't care about her. He doesn't care how she feels." (RR III 12). Appellant did not object until the prosecutor completed this entire statement. (RR III 12).

To preserve an issue for appellate review, a defendant must timely object. *Brown v. State*, 212 S.W.3d 851, 869 (Tex. App.--Houston [1st Dist.] 2006, pet. ref'd). To be timely, an objection must be raised at the earliest opportunity or as soon as the ground of objection becomes apparent. *Id*. Absent a timely objection, nothing is presented for review. *Id*.

Appellant failed to timely object to the prosecutor's "offensive and degrading" comment since he objected only after she uttered two more sentences. *See Ward v. State*, 522 S.W.2d 228, 230 (Tex. Crim. App. 1975) (objection was untimely when made only after prosecutor asked two additional questions). Furthermore, it is evident that appellant actually was objecting only to the last two sentences since his objection specified he was complaining of the prosecutor presenting argument and failing to limit her comments to what she expected the evidence would show. (RR III 12). The comment complained of on appeal involving the "offensive and degrading" claim was a direct statement about what

on appeal. *Id*.

16

she expected "[t]he evidence will show," while the next two sentences might perhaps be interpreted as bordering on argument. (RR III 12).

Given this context, therefore, it is obvious from the nature of appellant's objection that he was directing his trial complaint to the last two sentences and not to the "offensive and degrading" comment of which he complains on appeal. As such, the record indicates that appellant did not object to the "offensive and degrading" reference at all or, if he did, the objection was untimely. Absent an objection, or a timely objection, appellant presents nothing for review.

Moreover, even if appellant had properly objected to the prosecutor's "offensive and degrading" comment, his appellate complaint would be meritless because the trial judge granted appellant all the relief he requested. As mentioned, appellant's objection was sustained, but he sought no further relief on this matter. He did not request an instruction to disregard or a mistrial. (RR III 12). To preserve error, a defendant must pursue his objection to an adverse ruling. *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007). Since appellant failed to reach an adverse ruling, he presents nothing for review. *Id*.

Moreover, even assuming appellant preserved his complaint about the prosecutor's "offensive and degrading" comment, his argument would remain meritless because the comment properly described what the prosecutor expected the evidence to show. TEX. CODE CRIM. PROC. ANN. art. 36.01(a)(3) (West 2007)

17

(purpose of opening statement is to allow the prosecutor to state to the jury facts that are expected to be proved). Namely, the video of appellant, an adult male, performing oral sex on and sexual intercourse with his juvenile step-daughter is in fact "offensive and degrading." As such, the statement was proper and there was no error relating to this particular comment.

Finally, even assuming either of the prosecutor's two opening-statement comments was improper, any error was harmless. A nonconstitutional error that does not affect substantial rights does not justify overturning a verdict. *Tillman v. State*, 376 S.W.3d 188, 199 (Tex. App.--Houston [14th Dist.] 2012, no pet.). If the error did not influence the jury, or had only a slight effect, the error is harmless. *Id*. An appellate court should consider everything in the record to determine the likelihood the jury's decision was affected by the error. *Id*. This includes such factors as evidence and testimony admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the error, and how the error may be considered in connection with other evidence in the case. *Id*.

The prosecutor's comments did not influence the jury's verdict. The evidence of appellant's guilt is overwhelming. *Motilla v. State*, 78 S.W.3d 352, 357 (Tex. Crim. App. 2002) (overwhelming evidence of guilt is factor in harm analysis). In addition to Amy's testimony about the charged offenses, the jury saw a video depicting appellant's actual commission of the offense and heard an audio

18

recording in which appellant essentially admitted his guilt. (RR III 101, 178-179; SX 3, 7). In fact, defense counsel acknowledged these two pieces of damning evidence during his closing guilt-innocence argument, leading him to advise the jurors that he was "not going to insult [their] intelligence" by arguing that appellant was innocent or the evidence was insufficient. (RR IV 6-7).

Since the evidence of appellant's guilt was overpowering, so much so that defense counsel did not even attempt to argue he was not guilty, the jury was not influenced by the prosecutor's comment that the video was offensive and degrading, particularly since the jurors must have reached this same conclusion when they viewed appellant's undisputedly "offensive and degrading" acts depicted in the video. Similarly, given the nature of the evidence, the jury's verdict was not influenced by the prosecutor simply apologizing to the jurors for the necessity of exposing them to the video. Accordingly, any error was harmless.

Under this point of error, appellant also complains about the prosecutor's closing argument at the punishment stage of trial. By combining more than one contention in a single point of error, appellant presents a multifarious point which presents nothing for review. *Foster v. State*, 101 S.W.3d 490, 499 (Tex. App.-- Houston [1st Dist.] 2002, no pet.). As such, appellant waived this claim.

In any event, appellant's contention is meritless because the complained-of argument is a proper summation of and a reasonable deduction from the evidence.

*Lair v. State*, 265 S.W.3d 580, 589 (Tex. App.--Houston [1st Dist.] 2008, pet. ref'd) (listing proper categories of closing argument). While recounting how Amy's mother and siblings sided with appellant regarding Amy's outcry against appellant, the prosecutor argued, "She is all alone now." (RR V 21). The prosecutor continued by arguing that there would be no one to take Amy out for a celebratory dinner when she gets accepted to college. (RR V 21-22).

This argument is a proper summation of and a reasonable deduction from the evidence because Amy's CPS caseworker testified that Amy is "alone" because her mother and siblings stood by appellant. (RR IV 35-36). As a result, Amy does not want to see her family members. (RR IV 50-53). And she did not know anyone at her new school. (RR IV 52). So the prosecutor's argument, which painted a picture of Amy's loneliness, was supported by the record and, therefore, was proper.

Moreover, even assuming the prosecutor's argument was improper, any error was cured by the trial judge's prompt instruction to the jury to disregard it. (RR IV 22). Jury instructions to disregard are generally considered sufficient to cure improprieties that occur during trial. *Gamboa*, 296 S.W.3d at 580. A reviewing court assumes that a jury will follow the judge's instructions. *Id.* It puts its faith in the jury's ability, upon instruction, consciously to recognize the potential for prejudice, and then consciously to discount the prejudice, if any, in its

deliberations. *Gardner*, 730 S.W.2d at 696. Therefore, there was no reversible error.

Based on these various alternative reasons, appellant's second point of error is meritless and should be overruled.

## REPLY TO POINT OF ERROR THREE

In his third point of error, appellant contends the trial judge abused his discretion by allowing the State to pose irrelevant questions about Amy's "emotional state and demeanor." (appellant's brief, p. 8). Appellant maintains that any psychological difficulties suffered by Amy were not relevant.

Other than his general complaint about questions regarding Amy's emotional state and demeanor, appellant has not identified any particular question with which he takes issue. Similarly, he provides no record citations under this point of error. His brief fails to direct this Court to anywhere in the appellate record where alleged error occurred.

A defendant's appellate brief "must contain a clear and concise argument for the contentions made, with appropriate citations … to the record." Tex. R. App. P. 38.1(h). A defendant must cite the appellate court to the specific portion of the appellate record where the objectionable event occurred. *Lape v. State*, 893 S.W.2d 949, 953 (Tex. App.--Houston [14th Dist.] 1994, pet. ref'd). A reviewing court has no duty to search an appellate record for reversible error. *Id*. Nothing is preserved

for review if the defendant does not direct the appellate court to the proper place in the record where it may find the complained-of error. *Id*.

Having failed to provide any record citations under this point of error, appellant presents nothing for review. *Id*. As such, this point of error should be overruled on this basis alone. *Id*. at 953-54.

In any event, using the "word search" function, the State has located eight instances in the electronic version of the reporter's record in which the prosecutor posed a question about Amy's "demeanor." (RR III 17, 26, 36, 38, 41, 44, 45, 73). There are no questions incorporating the term "emotional state." Assuming appellant is complaining about all, some, or one of these questions, his complaint is meritless.

Regarding the prosecutor's eight questions about Amy's demeanor, appellant objected only a single time (the second time such a question was posed). (RR III 26). The other seven times the prosecutor broached this topic, the questions were answered without objection. (RR III 17, 36, 38, 41, 44, 45, 73).

To preserve an issue for appellate review, a defendant must object to the alleged error in the trial court. Tex. R. App. P. 33.1(a)(1)(A). A defendant also must object every time the allegedly inadmissible testimony is offered. *Rios v. State*, 263 S.W.3d 1, 5 (Tex. App.--Houston [1st Dist.] 2005, pet. dism'd, untimely

22

filed).  Since appellant objected only once of the eight times testimony about Amy's demeanor was elicited, he waived any error and presents nothing for review.

Furthermore, even if appellant had preserved his complaint for appellate review, it would be meritless because the demeanor of a child-victim of sexual assault may be relevant because a change in behavior is consistent with the victim having experienced a traumatic event which, in turn, tends to prove the offense occurred.  *Yatalese v. State*, 991 S.W.2d 509, 511 (Tex. App.--Houston [1st Dist.] 1999, pet. ref'd).  Since the evidence was relevant, the trial judge did not abuse his discretion in admitting it.  *Gonzales v. State*, 190 S.W.3d 125, 133 (Tex. App.--Houston [1st Dist.] 2005, pet. ref'd) (trial court's admission of testimony is reviewed for abuse of discretion).

Finally, any error in the admission of evidence about Amy's demeanor was harmless since the evidence of appellant's guilt was overwhelmingly supported by the videotape depicting appellant's commission of the offense and his audiotaped admission of wrongdoing.  *Tillman*, 376 S.W.3d at 199 (if an error did not influence the jury, or had only a slight effect, it is harmless).  Furthermore, any error in the admission of the complained-of evidence was cured by the admission of the same evidence elsewhere without objection.  *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003) (error in the admission of evidence is cured when the same evidence comes in elsewhere without objection).

Based on these various alternative reasons, appellant's third point of error is meritless and should be overruled.

## REPLY TO POINT OF ERROR FOUR

In his fourth point of error, appellant contends the trial judge erred by not allowing defense counsel to demonstrate that Amy's allegations of appellant's molestation of her in California were ruled "unfounded" by the investigating authorities. (appellant's brief, p. 9). Appellant argues the jury had a right to know that one of Amy's accusations was unfounded.

The record reflects that defense counsel initially asked Adrian Woods, an assistant principal at Amy's high school in Houston, whether Amy's mother had told him that Amy made some similar allegations in California and that they were deemed "unfounded." (RR III 28-32). The prosecutor's hearsay objection was properly sustained since defense counsel was attempting to have Wood testify about an out-of-court statement made by another person to prove the truth of the matter asserted. TEX. R. EVID. 801(d) (defining hearsay). Appellant does not contest this hearsay ruling on appeal.

Despite the trial judge initially excluding evidence that the California allegations were ruled unfounded (due to the hearsay manner in which appellant attempted to present the evidence), evidence that the California authorities closed the investigation of Amy's allegations as "unfounded" was nevertheless presented

to the jury on numerous subsequent occasions during the trial through three different witnesses. (RR III 48, 108-109, 110-111, 158). In fact, one witness read from the "CPS records from California" and confirmed, before the jury, that such records provide that the investigation of Amy's outcry was "unfounded and closed." (RR III 109).

Accordingly, contrary to appellant's contention, the jury was presented with evidence that Amy's California allegations were deemed unfounded, the same evidence appellant claims was improperly excluded. Any error in the exclusion of evidence is harmless if the same evidence is subsequently admitted without objection. *Tollett v. State*, 422 S.W.3d 886, 896 (Tex. App.--Houston [14th Dist.] 2014, pet. ref'd). Absent any reversible error, appellant's fourth point of error is meritless and should be overruled.

## REPLY TO POINT OF ERROR FIVE

In his fifth point of error, appellant contends the trial judge erred by not allowing him to inquire into Amy's past sexual activity. He claims such evidence was relevant to explain or rebut medical testimony introduced by the State. (appellant's brief, p. 10-11).

To preserve error in the exclusion of evidence, a defendant must present an appellate record showing what the excluded evidence would have been. *Guidry v. State*, 9 S.W.3d 133, 153 (Tex. Crim. App. 1999); *Stewart v. State*, 686 S.W.2d 118,

122 (Tex. Crim. App. 1984); *Tristan v. State*, 393 S.W.3d 806, 811 (Tex. App.--Houston [1st Dist.] 2012, no pet.). Absent such a showing, nothing is presented for review. *Id*.

Appellant sought to introduce a portion of the assessment form generated by the Children's Assessment Center (CAC) after a CAC doctor performed a sexual abuse exam on Amy. (RR VI – SX 1). Specifically, appellant wanted to present a written statement found in a section apparently titled, "Sexually active. Question. Comments." (RR III 50). The judge denied appellant's request to introduce this particular evidence. (RR III 52).

Although the CAC form was admitted into evidence (RR III 69), the excluded portion of which appellant complains is not readable because, consistent with the judge's ruling, the prosecutor redacted it by "black[ing] it out and recopy[ing] it." (RR III 55; RR VI – SX 1). Therefore, from the face of the document, it cannot be determined what the excluded evidence would have been.

The discussion about the form by the parties at trial also fails to conclusively establish the content of the missing portion of the CAC form exhibit. While discussing the admissibility of the redacted section of the form, the judge initially said, "I'm looking at what it said. It said started age 15 years in California is what it says." (RR III 50). Defense counsel then suggested that the section in question reflected that Amy "was sexually active with other people apparently. Started at

26

age 15 in California." (RR III 51). The judge disagreed with defense counsel's reading of the redacted portion by countering, "That's not what this says though. You're saying she's sexually active with other people. I don't see anything about that. I don't know if we're referring to the defendant or what we're referring to." (RR III 52). Based on this exchange, the content of the redacted portion of the CAC form (the exclusion of which appellant complains on appeal) is not clear.

Therefore, appellant failed to provide a record on appeal demonstrating what the excluded evidence would have been. Absent such a showing, appellant presents nothing for review. *Stewart*, 686 S.W.2d at 122. For this reason alone, appellant's fifth point of error should be overruled.

Alternatively, appellant waived any error because his trial objection fails to comport with his appellate argument. *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002) (to preserve error, appellate complaint must comport with trial objection). On appeal, appellant maintains the excluded evidence (supposedly of Amy's past sexual activity) was admissible to rebut or explain the State's medical evidence. (appellant's brief, p. 10-11). At trial, however, defense counsel argued the evidence in question was admissible because:

> …this is the heart and soul of our defense. That all of these allegations in California were found to be unfounded by CPS. And the authorities out there, he was not charged. My client was not charged with any offense. She exaggerated –
>
> . . .

27

> That she exaggerated and lied back then. When in fact she was sexually active with other people apparently. Started at age 15 in California. I think it's relevant. I think it goes to explain what was going on [sic] her life whenever she's falsely accusing my client of sexually abusing.
>
> . . .
>
> It's relevance. More probative than anything.
>
> . . .
>
> More probative. And goes to heart of my defense, Judge. Their intent on bringing in on [sic] extraneous conduct of my client while he was in California.

(RR III 51-52). Unlike his appellate contention, appellant's trial objection makes no mention of rebutting the State's medical evidence. Therefore, absent comportment between his appellate argument and his trial objection, appellant presents nothing for review. *Id*. For this reason alone, appellant's point of error should be overruled.

Moreover, even if appellant had preserved his complaint for appellate review, it would be meritless. As mentioned, the trial judge did not allow appellant to introduce evidence that appellant interpreted as showing that Amy "was sexually active with other people apparently." (RR III 51). Assuming such evidence actually did show that Amy had sex with other people, the trial judge properly excluded it since, generally, "specific instances of a victim's past sexual behavior" is not admissible in a sexual assault case. TEX. R. EVID. 412(a)(2).

Nevertheless, appellant argues Amy's past sexual activity, if any, was admissible under a Rule 412 exception which allows the admission of evidence of

specific instances of a victim's past sexual behavior if the evidence "is necessary to rebut or explain scientific or medical evidence offered by the prosecutor." TEX. R. EVID. 412(b)(2)(A). Appellant's reliance on this exception is misplaced because the State's medical expert, the CAC doctor, testified she found no trauma to Amy's vagina and no evidence of abuse. (RR III 82-83). The doctor could not determine whether Amy had experienced sexual intercourse. (RR III 82). Given this medical testimony (which did not reveal evidence of sexual activity), there was no medical finding to rebut or explain by the admission of any evidence that Amy had had sex with other people.

As such, the trial judge did not err in excluding the evidence in question because the exception upon which appellant relies is inapplicable. Accordingly, appellant's point of error is meritless and should be overruled.

Finally, any error in the exclusion of evidence was harmless. Given the overwhelming evidence of appellant's guilt produced by the video depicting his actual commission of the offense and appellant's audio recorded admission of wrongdoing, the exclusion of any evidence of Amy's past sexual activity would not have influenced the jury's verdict.

Based on these various alternative reasons, appellant's fifth point of error is meritless and should be overruled.

In his sixth point of error, appellant contends the trial judge erred during the punishment stage by admitting testimony about "the generalized symptoms of Rape Trauma Syndrome." (appellant's brief, p. 11). Appellant claims such evidence was not relevant because Amy did not suffer from all of the identified symptoms.

During the punishment phase, the prosecutor asked Dr. Lawrence Thompson, a licensed psychologist employed by the CAC, what symptoms are commonly seen in sexual abuse victims. (RR IV 13-14, 16). Over appellant's "relevance" objection, the doctor replied, "Depression, anxiety, interpersonal difficulties, and sexual acting out behaviors are three categories of symptoms we tend to see hiding." (RR IV 16).

Even assuming Amy did not exhibit these described symptoms, the trial judge did not err in admitting the doctor's testimony because testimony listing the possible symptoms that may manifest in a sexual-assault victim is admissible because the jury is entitled to know the probable long-term psychological effects that the victim might suffer for which the defendant is blameworthy. *Napier v. State*, 887 S.W.2d 265, 266 (Tex. App.--Beaumont 1994, no pet.); *see also Cohn v. State*, 849 S.W.2d 817, 817-20 (Tex. Crim. App. 1993) (psychiatrist's expert testimony about behavioral characteristics common among child sexual abuse

victims is admissible); *Jessop v. State*, 368 S.W.3d 653, 691 n.61 (Tex. App.--Austin 2012, no pet.) (same).

In any event, the record reflects that Amy actually did suffer from most of the symptoms listed by Dr. Thompson – severe depression (and suicidal ideations), anxiety, and interpersonal difficulties with her family members. (RR III 45, 71-74, 79; RR IV 30-31, 34, 35-36, 50-53). As such, the doctor's list did relate to Amy's actual symptoms and, therefore, was relevant. *Williams v. State*, 895 S.W.2d 363, 366 (Tex. Crim. App. 1994) (analyzing *Cohn* and observing that witnesses other than the expert testified that the child victims in that case displayed some of the characteristics that the expert had testified were commonly displayed by child victims of sexual abuse, thereby linking the expert's generic testimony to the facts of that case).

Accordingly, there was no error in the admission of this testimony and point of error six should be overruled.

## REPLY TO POINT OF ERROR SEVEN

In his seventh point of error, appellant contends the trial judge erred at the punishment stage by allowing Dr. Thompson to testimony about "the absence of medical treatment for pedophilia." (appellant's brief, p. 12). Focusing on the word "pedophilia," appellant maintains there is a particular narrow definition of this

31

term and there is no evidence that he is a pedophile as defined by the Diagnostic and Statistical Manual of Mental Disorders.

Appellant's contention is meritless because the prosecutor asked Dr. Thompson about potential treatment for "sex offenders," not pedophiles. (RR IV 21-25). And the sole instance in which Dr. Thompson volunteered the word "pedophilia" in a nonresponsive answer, the trial judge instructed the jury to disregard the answer. (RR IV 22). Similarly, the single time the doctor testified there was no cure for pedophilia, the jury was instructed to disregard the testimony. (RR IV 22).

Appellant's complaint arises from an exchange that covers about five pages of the reporter's record. (RR IV 21-25). It began when the prosecutor addressed Dr. Thompson, "I want to ask you about potential treatment for *sex offenders*. Are there any forms of psychological intervention?" (RR IV 21) (italics added). Defense counsel's relevancy objection was overruled after some discussion. (RR IV 22). In response to the doctor's request that she repeat the question, the prosecutor asked, "Are there any psychopharmacological means of intervention for somebody who's a *sex offender*?" (RR IV 21-22) (italics added). Defense counsel's second relevancy objection was overruled. (RR IV 22).

The doctor answered, "There is nothing that we have in the way of psychopharmacologic intervention in the way of therapy and in the way of any

other type of intervention that can cure someone of pedophilia." (RR IV 22). Defense counsel objected that this answer was "outside the parameters of that question" and "nonresponsive." (RR IV 22). The trial judge sustained the objection and instructed the jury to disregard the doctor's response, but denied appellant's motion for mistrial. (RR IC 22).

The prosecutor then asked, "Is there anything medically or pharmaceutically that you can prescribe to a *sex offender* that can cure them?" (RR IV 22) (italics added). Appellant lodged a relevancy objection before the doctor responded and the trial judge sustained the objection. (RR IV 22-23). The prosecutor then slightly modified her question and, after some discussion, the trial judge again sustained appellant's relevancy objection before the doctor answered. (RR IV 23).

Next, the prosecutor asked Dr. Thompson if he kept up with literature regarding "sex offenders." (RR IV 23). Following an affirmative response, the prosecutor asked the doctor if he had been involved in some of the programs available in prison. (RR IV 23). After the doctor described his participation in some of the prison sex offender programs, the prosecutor asked him what the goal is for such programs. (RR IV 24). Dr. Thompson replied, "The goal of that treatment is management of inappropriate sexual impulses. There's recognition that we have nonresponsive, no way –" (RR IV 24). At this point, appellant's "nonresponsive" objection was sustained. (RR IV 24).

33

The prosecutor then straightforwardly asked, "Is there any way to cure it?" (RR IV 24). Appellant's immediate objection was sustained. (RR IV 24-25). The parties approached the bench and the prosecutor asked to pose the following question, "Is there any type of cure for someone who abuses children?" (RR IV 25). The trial judge sustained appellant's relevancy objection. (RR IV 25). The prosecutor then passed the witness and there were no further questions about this matter. (RR IV 25).

As mentioned, appellant claims the trial judge erred in permitting testimony about the lack of treatment for pedophilia. Appellant argues questions about "pedophilia" are not relevant because there is a specific definition of the term "pedophilia" and there is no evidence that he falls within that definition. Insofar as appellant's argument hinges on the use of the term "pedophilia," his claim is meritless because the prosecutor always phrased her questions in terms of treatment for a "sex offender"; she did not use the word "pedophile" or any variation of it. Having been twice found guilty of the offense of sexual assault of a child, appellant does not contest the accuracy of referring to him as a sex offender. Since the prosecutor's questions did not implicate the term of which appellant complains, no error arose from her inquiries.

Admittedly, however, Dr. Thompson did use the term "pedophilia" a single time when answering one of the prosecutor's questions. (RR IV 22). He indicated

there was no method for "cur[ing] someone of pedophilia." (RR IV 22). But the trial judge immediately instructed the jury to disregard this answer. (RR IV 22).

Jury instructions to disregard are generally considered sufficient to cure improprieties that occur during trial. *Gamboa*, 296 S.W.3d at 580. A reviewing court assumes that a jury will follow the judge's instructions. *Id*. It puts its faith in the jury's ability, upon instruction, consciously to recognize the potential for prejudice, and then consciously to discount the prejudice, if any, in its deliberations. *Gardner*, 730 S.W.2d at 696. Accordingly, any error in the doctor's reference to "pedophilia" was cured. And, aside from this one disregarded comment, the doctor did not state there was no treatment for appellant's condition, whether it be labelled "pedophilia" or "sex offender." (RR IV 21-25). Since the judge instructed the jury to disregard the testimony of which appellant complains on appeal, appellant's point of error is meritless and should be overruled.

Alternatively, appellant presents nothing for review because his appellate argument does not comport with his trial objection, *Wilson*, 71 S.W.3d at 349 (to preserve error, appellate complaint must comport with trial objection). On appeal, he argues any reference to treatment for pedophilia is irrelevant because he is not a pedophile. He did not make this particular claim in the trial court. (RR IV 21-25). By raising this argument for the first time on appeal, appellant waived any error and presents nothing for review.

Finally, to the extent that appellant's argument depends on his claim that there is no evidence that he is a pedophile, as that term is defined in the Diagnostic and Statistical Manual of Mental Disorders, his argument is meritless. According to appellant, pedophilia is defined as a condition in which an adult experiences "intense and recurrent sexual urges towards – and fantasies about – prepubescent children." (appellant's brief, p. 12).

There is evidence in the record that appellant fits this definition. Appellant began molesting Amy when she was about seven years old. (RR III 120). He touched her vagina and chest daily. (RR III 121; RR VI – SX 1). At some point, while Amy was still in elementary school, appellant began taking her to motel rooms where he would show her pornographic videos. (RR III 121-122). During these sessions, appellant touched Amy's vagina and breasts and he attempted to have sexual intercourse with her. (RR III 122). Appellant told Amy that he was teaching her how to have sex. (RR III 122).

When Amy was in middle school (13 years old), appellant began having sexual intercourse with her. (RR III 122-123; RR VI – SX 1). Specifically, he placed his penis in her vagina. (RR III 124). He also performed oral sex on Amy and caused her to reciprocate. (RR III 124). Appellant continued to have sex with Amy until he was arrested when she was sixteen years old. (RR III 134-135; RR VI – SX 1).

Based on appellant's consistent molestation of his juvenile stepdaughter for nearly a decade, a reasonable person could infer that he fit the definition he cites for pedophilia. Therefore, even if there were some evidence about pedophilia treatment properly before the jury, there would be no error in its admission.

Based on these alternative reasons, appellant's seventh point of error is meritless and should be overruled.

## REPLY TO POINT OF ERROR EIGHT

In his eighth point of error, appellant contends the trial judge erred by sustaining the prosecutor's objection to his closing argument at the punishment stage. Appellant claims his argument was a proper comment about the application of parole law to his case.

During his closing argument, defense counsel explained to the jury that appellant would not be eligible for parole until he had served half his sentence. (RR V 18-19). He continued:

> The parole board won't even start looking at him until
> he's done half of his time. And then they can deny parole
> over and over again, and he can do a lot more than half.
> He can do two-thirds, three-quarters or all of it.

(RR V 19). The judge sustained the prosecutor's objection to this argument. (RR V 19).

The trial judge did not err in sustaining the State's objection because juries are not to consider, and attorneys may not argue, the application of the parole laws to a particular defendant. TEX. CODE CRIM. PROC. ANN. art. 37.03 § 4 (West Supp. 2014). Since appellant's argument applied the parole laws to him in particular (in violation of article 37.07), it was improper. *Nash v. State*, 175 S.W.3d 427, 430-31 (Tex. App.--Texarkana 2005, pet. ref'd).

Accordingly, appellant's eighth point of error is meritless and should be overruled.

**REPLY TO POINTS OF ERROR NINE AND TEN**

In his final two points of error, appellant contends the cumulative effect of the errors he alleges in his first eight points of error denied him a fair trial and his constitutional right of due process. As described in detail in the State's reply to appellant's first eight points of error, no error was committed. Therefore, there is no "cumulative error" to consider. *Cadoree v. State*, 331 S.W.3d 514, 530 (Tex. App.--Houston [14th Dist.] 2011, pet. ref'd). Points of error nine and ten are meritless and should be overruled.

# CONCLUSION

It is respectfully submitted that all things are regular and the conviction should be affirmed.

**DEVON ANDERSON**
District Attorney
Harris County, Texas

/s/ Dan McCrory
**DAN McCRORY**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas  77002
(713) 274-5826
TBC No. 13489950
mccrory_daniel@dao.hctx.net

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing instrument has been sent to the

following email address via TexFile:

Mark W. Bennett
Attorney at Law
mb@ivi3.com

/s/ Dan McCrory
**DAN McCRORY**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas  77002
(713) 274-5826
TBC No. 13489950

## CERTIFICATE OF COMPLIANCE

The undersigned attorney certifies that this computer-generated document has a word count of 8,692 words, based upon the representation provided by the word processing program that was used to create the document.

/s/ Dan McCrory
**DAN McCRORY**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas  77002
(713) 274-5826
TBC No. 13489950

Date: 12/28/2015